## UNION CENTRAL LIFE INSURANCE COMPANY *v.* WHETZEL.

[No. 3,942.    Filed October 28, 1902.]

INSURANCE.—*Demand Upon Agent for Paid-up Policy.*—Where a life insurance policy contains no provision that it shall be surrendered at any particular place or to any particular person when the holder desires a paid-up policy, a demand for a paid-up policy made upon a general agent who represented the company in its negotiations with the insured was a demand upon the company, although the agent had no authority to issue policies. *pp. 663–665.*

SAME.—*Extension of Time by Agent for Payment of Premiums.*—*Estoppel.* —Where an insurance company accepted overdue payments from a policy holder it can not thereafter be heard to say that the agent granting the extensions had no authority to do so. *p. 665.*

SAME.—*Policy.*—*Waiver of Conditions.*—A stipulation in an insurance policy that none of its terms could be modified or changed except in a specified manner may be waived by the company either expressly or by the conduct of the company. *pp. 665–667.*

From Noble Circuit Court; *J. W. Adair*, Judge.

Action by Andrew E. Whetzel against the Union Central Life Insurance Company on a contract of insurance. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*L. W. Welker*, for appellant.
*H. C. Peterson*, for appellee.

ROBINSON, J.—Appellant issued to appellee a policy insuring his life in the sum of $1,500 for ten years from September 15, 1889, agreeing to pay him that sum September

15, 1899. The policy was issued in consideration of the statements made in the application "and of the present payment of the sum of $678.25, and of the payment of $135.65 at the home office of the company on or before the 30th day of September, 1894, at noon, and of the like payment of the same amount annually thereafter during the term of five years, and of the payment when due of any and all notes given for premiums or parts of same." The policy further states that "the premium upon this policy, the receipt whereof has been acknowledged, has been paid by $135.65 cash, and four notes for $135.65 each, bearing even date with mortgage securing the same, payable respectively on September 15, 1890, 1891, 1892, and 1893." The policy further provides that "failure to pay any one of said notes at maturity will give the company the right, at its election, to avoid this policy with all of its provisions, and the note or notes past due at the date of the exercise of the election to cancel the policy will be payable, with interest to date of payment, as premium for the period of actual insurance up to date of cancelation upon the books of the company, and the remaining notes, if any, will thereupon, on surrender of the policy, be surrendered to the maker." It is also provided that, "after three years' premiums have been paid, except in case of failure to pay at maturity a premium note, the company will, upon legal surrender of this contract while in force, issue a paid-up non-participating policy for an amount equal to as many tenths of the amount insured as there have been annual payments made on this policy at date of surrender. In case no legal surrender has been made as above provided, and provided the insured has paid at maturity all notes given for premiums, then this policy shall, after three full years' premiums have been paid, without surrender, become a paid-up term policy" for a period to be determined in a manner therein specified. The first clause of certain conditions requires that all premiums or premium notes shall be paid

on or before the days upon which they become due, at the company's home office, or to an authorized agent. The sixth clause of these conditions provides that "upon the violation of the foregoing conditions this policy shall be null and void without action on the part of the company." The eighth clause specifies that the policy and application set forth the complete contract of insurance; that none of its terms can be modified, "nor any forfeiture under it waived, save by an agreement in writing signed by the president, vice president, or secretary of the company."

The complaint avers that appellee paid the first five premiums before maturity, and before another premium became due he offered to make a legal surrender of the policy, and at the same time demanded of the company a paid-up non-participating policy for five-tenths of the face of the policy, and that the company refused to receive the surrender of the policy, and also refused to issue the paid-up policy; that if appellant had issued to him the policy as demanded it would have become due and payable to him on the 15th day of September, 1899, in the sum and of the value of $750; that on the 28th day of October, 1899, appellee borrowed $1,500 of appellant and assigned the policy to it as collateral security, which policy was so held by appellant until the 27th day of October, 1899, at which time the loan was paid without recourse to the collateral; that after the loan of $1,500 was paid, appellee demanded payment of the value of such collateral, to wit, $750, which appellant refused to pay. It is also averred that appellee has performed all the conditions and terms of the policy and the contract on his part. The appellee asks damages in the sum of $750.

The premiums on the policy were paid for the years 1889, 1890, 1891, 1892, and 1893. The premiums for 1894 and following years were not paid. Appellee insists that the evidence shows that the policy was still in force in November, 1894, at which time he requested appellant's agent to

procure for him a paid-up policy, which he promised to do. Appellant insists that the policy, by its terms, lapsed because of appellee's failure to pay the premium due in September, 1894, and that it was thereafter carried as a paid-up term policy until July 21, 1899, when it expired.

The evidence shows that C. E. Everett was appellant's agent. His name appears upon the application for insurance as general agent. He countersigned the receipt given for the first premium as agent. The policy in question was issued by the company through his agency. He had no authority to issue policies. The four premium notes payable September 15, 1890, 1891, 1892, and 1893 were signed by appellee and his wife, the beneficiary. The note payable September 15, 1890, was paid September 12, 1890; the one due September 15, 1891, was paid September 1, 1892; the one due September 15, 1892, was paid seven or eight months after due; and the one due September 15, 1893, was paid August 21, 1894.

Mrs. Whetzel, wife of appellee and beneficiary named in the policy, testified that after the second premium was paid she called on Everett, at Ft. Wayne, in 1891, and "asked him if he would extend the time of each payment on the policy one year," which he agreed to do. On Saturday before the State election in 1894, she, acting for herself and husband, called on Mr. Everett and told him they had traded their farm, and demanded a paid-up policy, and he said he would get it; that they heard nothing from the company or Everett, and she went again in May, and while there he wrote to the company for a paid-up policy; wrote that he had written in November, and asked them to explain why they had not sent it, and about five or six days afterwards her husband got a letter, with a certificate of renewal enclosed, stating that Mr. Whetzel must be examined before he could have a paid-up policy; that Mr. Whetzel proceeded at once to have renewal certificate made out; then appellant wrote that the note for 1894 must be paid;

that they wrote and told the company to send the note, as they were ready to pay it,—had made arrangements to get the money to pay it,—but the note was not sent. In July she called again on Mr. Everett, and he told her there was no note for the 1894 premium, and that the company knew it; that if she would get the money he would send her a receipt signed by the secretary and treasurer; that Everett told her not to pay it unless a receipt was signed; that no receipt was signed; that she asked Everett what they should do with the old policy, and he said when he got the paid-up policy he would write them and they could bring it down and get the paid-up policy,—make the change at his office. On cross-examination she testified that they wanted whatever kind of policy Everett would get; told him they "wanted a paid-up policy so as to draw our money in 1899." All their correspondence was through Everett. The company said they must get a renewal in order to get a paid-up policy, and they were willing to do that. The company sent the amount they were to pay, which was $135.65, and interest on it for ten months at eight per cent. They refused to send that without a receipt. In September or October, 1894, before they saw Everett about a paid-up policy or renewal, they executed notes for the payments for 1895, 1896, 1897, and 1898, and expected them to carry the policy until the end of ten years, but were so in debt they couldn't carry the insurance.

Appellant's secretary testified that it was the secretary's duty to issue a paid-up policy if demanded; that appellee never made a demand for a paid-up policy before it lapsed; that Everett was at one time general agent of the company in Indiana, but never had authority to issue policies; that witness was never advised by Everett that a paid-up policy was demanded by appellee; that on July 1, 1895, witness received from Everett an application for the renewal of the policy, which was approved by appellant, and appellee notified, through Everett, that his policy would be reinstated

upon the payment of the overdue premiums, with interest; that appellee never paid the premium or interest.

Appellant's treasurer testified that on September 24, 1894, he sent to appellee notes for the premiums due September 15, 1895, 1896, 1897, and 1898; that he had sent a receipt to the agent for the premium due September, 1894, which was returned unpaid in his next report to the company; that the premium notes were never received; neither appellee nor his wife ever demanded a paid-up policy.

On September 24, 1894, appellant's treasurer wrote appellee enclosing premium notes payable September 15, 1895, 1896, 1897, and 1898, and stating that he would be pleased to receive them at an early date, when signed by appellee and his wife. On October 11th the treasurer again wrote concerning the mortgage loan and requesting that the premium notes be signed and returned by the next mail. On November 9th he again wrote concerning the loan and stated that the notes had not yet been returned. On November 20th he again wrote concerning an extension of the mortgage loan, and stated: "I find that all that is now necessary to complete the extension is the return of premium notes No. 63,713, issued upon your life, due September 15, 1895, 6, 7, 8, respectively, for $135.65 each, enclosed to you in my letter of the 11th ult., duly executed by yourself and wife. Please be good enough to see that the same are returned to this office upon receipt of this letter." On December 11th another letter from the treasurer requests that these premium notes be executed and returned at once. In none of these letters is anything said about the payment of the premium due September 15, 1894.

The policy seems to have contemplated the giving of a note for each premium, as it provides that after three years' premiums have been paid, "except in case of failure to pay at maturity a premium note," the company will, upon surrender of the policy while in force, issue a paid-up policy. Failure to pay any one of the first four notes given for pre-

miums, gave the company the right, *at its election,* to avoid the policy. Also, upon the violation of the condition that all premiums or notes or interest upon notes given for premiums should be paid on or before they became due, the policy should be null and void *without action on the part of the company.*

It has been held that the above conditions relating to the nonpayment of the notes are not consistent with each other, and that the condition most favorable to the insured must be adopted. *Union, etc., Ins. Co.* v. *Jones,* 17 Ind. App. 592. See *Northwestern, etc., Ins. Co.* v. *Hazelett,* 105 Ind. 212, 55 Am. Rep. 192. And the payment of a premium note is in fact the payment of a premium. Each of the notes given stated that it was given for the premium on the policy, and that the policy should, at the option of the company, become null and void on failure to pay the note at maturity. The execution of the premium notes was not a payment of the premiums, but simply procured an extension of the time within which to pay them. A forfeiture clause set out in the policy is stipulated in the notes. The failure to pay a premium note at maturity had the same effect as the failure to pay a premium. So that the extension of the time for paying the notes beyond their maturity was nothing more than a further extension of the time for paying the premiums, which had already been extended through the execution of the notes. *Strauss* v. *Union, etc., Ins. Co.,* 170 N. Y. 349, 63 N. E. 347.

After appellee had paid five premiums, and before the sixth became due, he was entitled, upon surrender of the policy, to a paid-up policy for five-tenths of the amount insured. If the time for paying the premium due in September, 1894, had previously been extended for one year, the policy was in force in November, 1894, when a paid-up policy was demanded. The demand was made upon the general agent for a paid-up policy, which he promised to procure. True, this agent had no authority to issue a policy

of any kind; but he represented the company as its general agent, and had so represented it in the negotiations between the parties. A demand on him for a paid-up policy was a demand upon the company. The policy does not require that it shall be surrendered at any particular place, or to any particular person, when the holder desires a paid-up policy. It clearly appears that the time for paying the premium notes due in 1891, 1892, and 1893 was extended by the company's agent, and that the notes were paid after they were due. The company, having accepted these overdue payments, can not now be heard to say that the agent granting the extensions had no authority to do so. There is also evidence to show that the time for paying each annual premium was extended one year. The insured and the beneficiary could rightly conclude from the past conduct of the company that the policy would not be forfeited, even though the premium due September 15, 1894, was not paid until after that date.

The stipulation in the policy that none of its terms could be modified or changed except in a specified manner could itself be waived by the company either expressly, or by the conduct of the company. *Hanover Fire Ins. Co.* v. *Dole,* 20 Ind. App. 333; *Phenix Ins. Co.* v. *Tomlinson,* 125 Ind. 84, 9 L. R. A. 317, 21 Am. St. 203; *Germania, etc., Ins. Co.* v. *Hick,* 125 Ill. 361, 17 N. E. 792, 8 Am. St. 384; *Grubbs* v. *North Carolina, etc., Ins. Co.,* 108 N. C. 472, 13 S. E. 236, 23 Am. St. 62; *Viele* v. *Germania Ins. Co.,* 26 Iowa 9, 96 Am. Dec. 83; *Bonnert* v. *Pennsylvania Ins. Co.,* 129 Pa. St. 558, 18 Atl. 552, 15 Am. St. 739.

Although a policy may provide that an agent shall have no power to waive a forfeiture, yet the company may estop itself, by its conduct, from denying the grant of such powers to him. See *New York, etc., Ins. Co.* v. *Eggleston,* 96 U. S. 572, 24 L. Ed. 841; *Knickerbocker, etc., Ins. Co.* v. *Norton,* 96 U. S. 234, 24 L. Ed. 689; *German American Ins.*

*Co.* v. *Sanders,* 17 Ind. App. 134; *Supreme Court, etc.,* v. *Sullivan,* 26 Ind. App. 60; *Sweetser* v. *Odd Fellows, etc., Assn.,* 117 Ind. 97, 100; *Agricultural Ins. Co.* v. *Potts,* 55 N. J. L. 158, 39 Am. St. 637; *Germania, etc., Ins. Co.* v. *Hick, supra; Appleton* v. *Phenix, etc., Ins. Co.,* 59 N. H. 541, 47 Am. Rep. 220; *Phenix, etc., Ins. Co.* v. *Doster,* 106 U. S. 30, 27 L. Ed. 65; *Hartford, etc., Ins. Co.* v. *Unsell,* 144 U. S. 439, 36 L. Ed. 496; *Weidert* v. *State Ins. Co.,* 19 Ore. 261, 24 Pac. 242, 20 Am. St. 809.

Not only was nothing said in any of the letters above referred to about the policy having lapsed September 15, 1894, for nonpayment of the premium, but the letters very clearly indicate that the company, when the letters were written, considered the policy still in force. We must necessarily conclude from the statements made in these letters that, had the premium for 1894 been tendered at any time during the period covered by the letters, it would have been accepted. In which event appellee would have been entitled to a paid-up policy for six-tenths of the amount insured.

Under the conditions of the policy the agent had no authority to waive the requirement that premiums and premium notes should be paid at maturity But this condition might be waived by the company, and was waived by its ratification of the agent's acts in receiving the overdue premiums. The forfeiture clause in a policy is a condition in the company's favor which it may at any time waive. It is to the interest of both the insured and the insurer that the policy be kept in force. The company elected to continue the policy in force although it could have declared a forfeiture because of the failure to pay the last three premium notes when due. Acting upon the statement of the agent, which the company by its conduct had ratified, appellee could rightfully believe that his policy would not be forfeited because of his failure to pay the premiums at the appointed time. "It is abundantly settled," said the court

in *Sweetser* v. *Odd Fellows, etc., Assn.,* 117 Ind. 97, "that an insurance company will be estopped to insist upon a forfeiture, if, by any agreement, either express or implied by the course of its conduct, it leads the insured honestly to believe that the premiums or assessments will be received after the appointed day. * * * Forfeitures are not favored in the law, and courts, in order to avoid the odious results of a forfeiture, are not slow in seizing hold of such circumstances as may have been acted on in good faith, and which indicate an agreement on the part of the company, or an election, to waive strict compliance with the conditions and stipulations in the policy. Continuing a policy in force and accepting payment of premiums thereon, with full knowledge of facts which, according to a condition of the contract, make it voidable, is a waiver of the condition."

Whether the time for paying the premium for 1894 had been extended beyond the time when a demand was made for a paid-up policy, was a question of fact to be determined from the evidence. If the time had been so extended, no premium was due and unpaid when the demand was made. There is evidence that this extension was made. Had there been a loss at the date the paid-up policy was demanded, there could have been a recovery on the policy under the ruling in *Michigan, etc., Ins. Co.* v. *Custer,* 128 Ind. 25. And had there been a loss, a recovery could have been had only upon the theory that the policy was still in force.

Judgment affirmed.