## SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD *v.* LATHAM.

[No. 8,376. Filed February 18, 1915. Rehearing denied May 14, 1915. Transfer denied June 22, 1915.]

1. INSURANCE.—*Fraud in Settlement With Beneficiary.—Action for Damages.—Requisites.*—To sustain a judgment for plaintiff in an action against an insurer for damages on account of alleged fraud in making settlement under a policy in which plaintiff was the beneficiary, it must first appear that there was a valid contract of insurance on which defendant was liable, and, second, that the settlement was induced and procured by fraud to the resulting damage of plaintiff as alleged. p. 294.

2. INSURANCE.—*Mutual Benefit Insurance.—Contracts.—Constitution and By-Laws.*—Where the constitution and by-laws of a fraternal organization are by the terms of the application made a part of the certificate, they, with the certificate, constitute the contract of insurance. p. 295.

3. INSURANCE.—*Mutual Benefit Insurance.—Warranties in Application.—Effect of False Statements.*—Where the application for insurance provides that the representations and answers therein are warranted to be true, and the certificate issued thereon provides that if such representations or answers are in any respect untrue the certificate shall be null and void, it is essential, in order that the contract of insurance may not thereby be rendered voidable, that such representations and answers be true in every respect, regardless of the apparent materiality or immateriality thereof. p. 295.

4. INSURANCE.—*Mutual Benefit Insurance.—Warranties in Application.—Breach.*—Where the applicant for insurance in a fraternal society stated in his application that he had never been afflicted

with dropsy, scrofula, rheumatism, chronic, catarrh, syphilis or insanity, and by its terms expressly warranted that he was of sound bodily health and mind, and stated on the certificate over his signature that he had read the certificate and warranted himself to be in good health at the time, answers by the jury to interrogatories showing that insured had had syphilis prior to the application, that at the time he was of unsound mind, etc., being supported by the evidence, showed such a breach of the warranty contained in the application as to render the contract void, in the absence of anything showing a waiver of the breach or an estoppel from asserting it. p. 295.

5.  INSURANCE.—*Mutual Benefit Insurance.—Warranties in Application.—Breach.—Waiver.—Knowledge of Local Officer.*—Where the clerk of the local camp of a fraternal insurance society, authorized to solicit and receive applications, was charged by the' society's by-laws with the duty of collecting all moneys due the camp and locally due the sovereign camp, etc., evidence showing that on the day of the date appearing on the certificate issued to plaintiff's husband such clerk heard a conversation by decedent in which decedent disclosed exaggerated notions concerning his business, that within a few days thereafter such clerk was informed by decedent's brother that decedent had been committed to the insane hospital because of paresis which resulted from syphilis which decedent had contracted early in life, and that such clerk then advised the brother that the certificate was valid, and thereafter advised plaintiff that the certificate was valid and would be paid at decedent's death if the dues were kept paid, etc., together with evidence that the dues were paid, and other evidence sufficient to charge defendant with the duty of inquiry as to decedent's condition at the time of his application, was sufficient to show a waiver of a breach of the warranty in the application as to decedent's health, and to estop defendant from asserting the invalidity of the certificate, notwithstanding a provision of its by-laws that no agent or officer had power or authority to waive same. pp. 297, 301.

6.  INSURANCE.—*Mutual Benefit Insurance.—Authority of Local Officers.—Knowledge.—Presumptions.*—An officer of the local camp or lodge of a fraternal insurance society, who is charged with the duty of collecting assessments and remitting them to the supreme organization, is the agent of the latter, and knowledge required by him in the performance of such duty is the knowledge of his principal, since it is conclusively presumed that knowledge so acquired is communicated by him to the principal. p. 301.

7.  INSURANCE.—*Mutual Benefit Insurance.—By-laws.—Waiver.*—A provision in the by-laws of a fraternal insurance society that no

officer or agent has the power or authority to waive any of the provisions thereof or any of the conditions upon which certificates are issued, may be waived the same as any other provision of the by-laws or condition of the certificate.   p. 302.

8.  INSURANCE.—*Mutual Benefit Insurance.—Validity of Certificate.—Informalities Attending Issue.—* Informalities attending the issuance of the certificate sued on, consisting of an omitted signature to a printed statement that the applicant had made required payments and had been introduced as a member, and a failure to introduce or initiate the applicant, even if material to the validity of the certificate, must be deemed waived. in view of evidence showing that the certificate was delivered, that all preliminary payments were made, that the dues and assessments were thereafter collected with full knowledge of the facts, that the insured was at all times treated as a member, and that after his death the certificate was taken up by the society for the purpose of making settlement, etc.   p. 303.

9.  APPEAL.—*Review.—Findings.—Conclusiveness.*—Where the evidence, though by no means conclusive, was sufficient to make a case for the jury on the question of alleged fraud in procuring settlement with the beneficiary under a certificate on the life of her deceased husband, the finding of the jury thereon can not be disturbed.   p. 305.

10.  INSURANCE.—*Fraud in Settlement With Beneficiary.—Measure of Damages.—Instructions.*—In an action to recover damages on account of fraud practiced on the beneficiary in making settlement under a certificate issued by defendant, the measure of damages is the difference between the amount received in the settlement and the actual value of the thing surrendered, so that an instruction placing the measure as the difference between the amount paid and the face value of the certificate, to which the jury could not add interest, was erroneous.   p. 306.

11.  APPEAL.—*Review.—Harmless Error.—Instructions.*—Error in giving an erroneous instruction as to the measure of the damages recoverable can not work a reversal, even though the excessiveness of the damages was assigned as cause for a new trial, where appellant has waived such cause for new trial by failure to discuss it in the brief.   p. 307.

12.  NEW TRIAL.—*Argument in Support of Motion.—Discretion of Court.*—The right to be heard in argument in support of a motion for new trial does not exist under the practice, and the question of the necessity or advisability of such argument is for the trial court.   p. 308.

13.  APPEAL.—*Review.—Ruling on Motion for New Trial.—Waiver of Objections.*—Where it does not in any manner appear that appellant objected to the trial court disposing of the motion for new

trial without hearing argument thereon, appellant can not be heard to make such objection on appeal.    p. 308.

From Superior Court of Marion County (71,596); *Vinson Carter*, Judge.

Action by Mattie R. Latham against the Sovereign Camp of the Woodmen of the World. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Ralph Bamberger, Isidore Feibleman* and *A. H. Burnett*, for appellant.

*Newton J. McGuire*, for appellee.

CALDWELL, P. J.—This is an action brought by appellee, as the beneficiary of an insurance certificate issued by appellant, a fraternal insurance organization, on the life of Walter D. Latham, appellee's husband. The certificate was issued under date of November 9, 1903. The insured died April 24, 1905, and a controversy arising respecting the validity of the certificate, a settlement was effected by which appellant paid appellee the sum of $300, in consideration of the surrender and cancellation of the certificate. The suit was prosecuted to recover damages for alleged fraud and deceit in inducing and procuring such settlement. If the certificate was valid and in force, appellant's liability thereon was in the sum of $1,500. The verdict fixed appellee's damages at $1,668, for which sum judgment was entered. The questions presented arise under the motion for a new trial.

Appellee by her complaint alleges the issuing of the certificate; that the insured complied with all the requirements and performed all the conditions of the contract of insurance by him to be performed; admits that the insured made certain false answers in his application; avers that appellant with full knowledge of the facts, not only accepted and retained premiums and stated dues paid, but also induced the payment thereof by means of representations and assurances that notwithstanding such false answers, the certificate was valid and in force. The facts constituting the alleged fraud

and deceit by which such settlement was procured are specifically averred.

Appellant answered in nine paragraphs. The first is a general denial; the second payment; the fourth that the maximum liability under said certificate was $1,500; the third, sixth, seventh and eighth plead in various forms the existence of a controversy respecting appellant's liability under said certificate, and a compromise, settlement and accord and satisfaction, in the absence of fraud, by the payment of $300, which appellee retained; the ninth paragraph pleads a section of appellant's constitution, by the terms of which the consul commander of the local camp was shown not to have authority to waive any of the conditions or requirements of the contract of insurance; the fifth paragraph, that by insured's written application, alleged to be a part of the contract, he warranted that he had never been afflicted with insanity, chronic catarrh, rheumatism, syphilis, dropsy, or scrofula, and that at the time of making such application and when the certificate was delivered to him, he was sound in body and mind, and that he then had no diseases that tended to shorten his life; that said answers and warranties were false in that the insured had had all said diseases, and that at the time of making said application and when said certificate was delivered to him, he was in poor physical health and then had diseases which tended to shorten his life, and that at said times, he was of unsound mind; that appellant accepted said application and delivered said certificate in ignorance of said facts; that by the terms and conditions of said certificate, the fact that said answers and warranties were false rendered the certificate void.

Appellee replied to all the paragraphs of answer except the first and fourth. The pleadings are not challenged.

The first question presented is respecting the sufficiency of the evidence. In order that the judgment in appellee's favor may be sustained, it must appear, first, that there was a valid contract of insurance on which

appellant was liable, and second, that said settlement was induced and procured by fraud, to the resulting damage of appellee as alleged. We proceed to consider these questions in the order stated.

By the terms of the application and the beneficiary certificate issued thereon, such application and the constitution and by-laws of the fraternity are made parts of the certificate, and consequently, they, with the certificate, constitute the contract of insurance. *Supreme Lodge, etc.* v. *Graham* (1912), 49 Ind. App. 535, 97 N. E. 806. The application provides that all statements, representations and answers contained therein are warranted to be true. The fourth specification of the certificate, as exhibited with the fifth paragraph of answer, and in so far as it is material here, is as follows: ''If any of the statements or declarations in the application for membership, and upon the faith of which this certificate was issued, shall be found in any respect untrue, this certificate shall be null and void and of no effect, and all moneys which shall have been paid, and all rights and benefits which have accrued on account of this certificate shall be absolutely forfeited without notice or service.'' The insured's statements, representations and answers to questions, as contained in the application and certificate are by each of said instruments expressly made warranties. Such being the case, it is essential, in order that the contract of insurance may not thereby be rendered voidable, that such statements, etc., be true in every particular, and regardless of the apparent materiality or immateriality of the subject-matter thereof. *Catholic Order, etc.* v. *Collins* (1912), 51 Ind. App. 285, 99 N. E. 745.

Under the isssues here, the only statements made by the insured that are important are the following: In the application, he stated, in answer to questions, that he had never been afflicted with dropsy, scrofula, rheumatism, chronic catarrh, syphilis, or insanity. The application contains also the following: ''I hereby certify, agree

and warrant that I am of sound bodily health and mind; * * * have no injury or disease that will tend to shorten my life." The certificate contains the following signed by the insured: "I have read the above certificate * * * and warrant that I am in good health at this time." The foregoing are the only statements that are material here, for the reason that the issues present no others for our consideration.

There was no evidence that the insured had been afflicted with dropsy or scrofula. By answers to interrogatories returned with the general verdict, the jury found that the insured, prior to said application, had not had chronic catarrh or rheumatism. The evidence does not show that he was at any time afflicted with chronic catarrh. There was direct testimony given by nonexpert witnesses that he had had rheumatism prior to said application. However, the testimony of certain expert witnesses on the subject of the causes, nature and symptoms of rheumatism, involves in doubt the question of whether such was in fact the nature of the ailment under investigation. It was, therefore, within the province of the jury to determine whether such affliction was rheumatism. As indicated, the jury found in the negative on that subject. By the answers to interrogatories, the jury also found that the insured had had syphilis prior to October 22, 1903, being the date of such application, and that on said date, he was of unsound mind; also that on said date, he was not in good mental and physical health, and that he was insane on November 9, 1903, being the date of said certificate, and that appellant knew prior to the time when it received proofs of the death of insured the facts aforesaid respecting such mental and physical infirmities. The interrogatory in response to which the jury answered that the insured was not in good mental and physical health on October 22, is so worded that if either his mental or physical health was impaired, the interrogatory is satisfied. The contract here, as well as the interrogatories, treats insanity

Sovereign Camp, etc. *v*. Latham—59 Ind. App. 290.

as a mental disease. The evidence sustains the finding respecting the prior existence of syphilis and also the existence of said mental infirmity at the times indicated. There was evidence that ten or fifteen years prior to making said application, the insured contracted said physical disorder. There was no evidence that the insured was afflicted with said disease or with any other purely physical infirmity at the time of making such application or on the date of the certificate, but there was evidence that at each of said times he had a mental disorder in the form of paresis, and that such mental disorder was caused by such prior physical disease. On November 26, 1903, the insured, pursuant to an insanity inquest, was committed to the Central Hospital for the Insane, where he died April 24, 1905, as the result of a dislocated neck, caused by falling down a stairway. The fact of the prior existence of such physical disease and of such mental disorder at the time of making such application and when such certificate was delivered, constituted such a breach of the warranty contained in the application and beneficiary certificate, as to render the contract of insurance void, at the election of appellant, and we should be compelled so to hold, unless it may also be held that appellant waived such breach of warranty or is estopped from asserting it.

We proceed to consider the question of waiver, or what is practically its equivalent, the question of estoppel, as applied to the facts of this case. Appellant is a fraternal beneficiary association, incorporated under the laws of Nebraska. It is composed of a sovereign camp, beneficiary head camps, head camps and camps. One of such camps, known as Pioneer Camp No. 1 was located at Indianapolis, being the camp to which the insured made application, and through which such certificate was issued. Such local camp was authorized by the "constitution, laws and by-laws" of the association to solicit and receive applications for beneficiary membership. Among the officers of such local camp was one designated as clerk. By such "constitution, laws,

and by-laws'' it was made the duty of the clerk to collect
and receive all moneys due the local camp, and locally due
the sovereign camp, including camp dues, entrance or admis-
sion fees paid by the applicant for insurance at the time of
making such application, also the monthly assessments made
against the holders of beneficiary certificates to pay death
dues, and also the extra assessments made to that end. He
was charged with the duty also of remitting to the sovereign
clerk all moneys due the sovereign camp from the local camp
on account of such collections, including such assessments,
for all which services the clerk received a stated compensa-
tion. Section 69 of the "constitution, laws and by-laws" is
in part as follows:

"No officer, employe, or agent of the sovereign camp,
or of any camp, has the power, right or authority to
waive any of the conditions upon which beneficiary cer-
tificates are issued, or to change, vary or waive any of
the provisions of this constitution or of these laws.".

Appellant, ascribing to such provision the force and effect
of a by-law, states thereon in its brief, point 13, as follows:
"The appellant by its by-laws, limited the power of its offi-
cers and agents with reference to the waiving of forfeiture
of the policy, and prohibited such waiver, and the appellee
is charged with knowledge of this limitation and is bound
thereby, so that she may not rely upon the acts of the local
clerk, which might otherwise have created an estoppel or
amounted to a waiver."

There was evidence that on November 27, being the day
after the insured was taken to the hospital, the insured's
brother, at the request of appellee, called on the camp clerk
to inquire about the validity of the contract of insurance.
At that time the brother informed the clerk that the insured
was insane, and that he had been taken to the insane hos-
pital; that his mental ailment had been pronounced paresis;
that he had had syphilis early in life, and that his present
trouble had resulted from said early disorder. Under such

circumstances, the brother inquired of the clerk respecting the validity of the certificate, and whether or not appellee had better keep up the payments. The clerk advised the brother in substance that the certificate was valid, and that the payments be made.

It is admitted that appellee paid all assessments and dues on account of such certificate during the remaining life of the insured. There was evidence that at the maturity of the first assessment after the insured was declared insane, appellee sought the counsel of the clerk respecting the validity of the certificate under the circumstances, and that she was informed by him that the assured was in good standing, his certificate valid, and that if she kept up the payments the company would pay her the amount of the certificate at the death of the insured. Appellee, in reliance on such assurances, made the payment. Such assurances were repeated at the times when several other payments were made. There was, then, evidence that the clerk not only accepted, but also induced payments month after month from November, 1903, to April, 1905, with full knowledge on November 27, 1903, and thereafter that prior to said application the insured had had syphilis, and that as a result thereof, he was on and after said date of unsound mind. It follows that the clerk accepted and induced said payments with knowledge that there had been a breach of warranty respecting such physical disease. We have indicated that there was no evidence that the insured was not in good physical health at the time of making said application, and when said certificate was issued and delivered. In making such statement, we are not treating paresis as a physical infirmity. There was evidence, and the jury found that the insured was insane at each of said times. There was no direct evidence that the clerk had any knowledge that the insured was insane or that he was afflicted with paresis until he received information to that effect on November 27. However, the clerk, in his testimony, stated that he was present at a conversation had by the insured on the

evening of November 9, 1903, being the date of the certificate, with a number of members of the camp, in front of the hall where the camp met; that the insured stated that he was selling coffee to families from house to house, and that he had sold thousands of pounds that day; that he wanted to hire the persons present to help him sell coffee. The clerk testified that he thought at the time that the insured was simply bragging. The clerk, within a little more than two weeks after this occurred. had positive knowledge that the insured had been adjudged insane, and committed to an asylum. The only marked characteristic of the insured's mental aberration was his exaggerated ideas respecting the amount of business he was doing and the money he was making, and specifically respecting the amount of coffee he was selling. A number of persons who testified as witnesses, narrated incidents similar to that to which the clerk testified, and as happening shortly before the date of the application, and between that date and the date of the certificate and perhaps thereafter, and gave it as their opinion that the insured was of unsound mind at the respective times of such incidents. It would seem to follow that had inquiry been made by the clerk on or after November 27, such inquiry would have led to information that the insured was of unsound mind at the date of such application and also of such certificate. It would seem also that the circumstances were sufficient to provoke such inquiry. "Where one has knowledge of facts sufficient to excite the attention of a person of ordinary prudence and to put him on further inquiry, he is required to make such inquiry in good faith and with diligence, and, in the absence of so doing, he will be chargeable with the knowledge of the particular point or fact which such inquiry would have revealed or imparted." *Webb* v. *John Hancock, etc., Ins. Co.* (1903), 162 Ind. 616, 635, 69 N. E. 1006, 66 L. R. A. 632. See, also, *Blair* v. *Whittaker* (1903), 31 Ind. App. 664, 69 N. E. 182; 29 Cyc. 1113.

We hold that there was evidence to justify the jury in

Sovereign Camp, etc. *v*. Latham—59 Ind. App. 290.

finding that the clerk at the time when he was receiving payments of said assessments was chargeable with knowledge that the insured was of unsound mind when he made said application and when said certificate was issued, and with knowledge of the consequent breach of warranty, and in view of the general verdict, it will be presumed that the jury did so find. It follows that were said clerk the insurer and the party appellant here, the facts are sufficient to charge him with a waiver of said breaches of warranty, and to estop him from asserting the invalidity of the contract of insurance. We are then confronted with the question of whether there was such a relation between said clerk and the appellant as that the same results follow as against the latter. On this question, it would be a hopeless task to undertake to harmonize the conflicting decisions of the various states, and especially in view of the fact that the association involved here is in the nature of a fraternal beneficiary company, rather than a stock company. However, in this State, it seems to be settled in matters involving such insurance

6. companies that an officer of a local camp or lodge, who is charged with the duty of collecting assessments and remitting them to the supreme or sovereign organization, is the agent of the latter; that knowledge acquired by him in the performance of such duty is the knowledge of his principal, for the reason that it is conclusively presumed that he communicated such knowledge to his principal. *Farmers Mut. Fire Ins. Co.* v. *Jackman* (1905), 35 Ind. App. 1, 73 N. E. 730; *Supreme Court, etc.* v. *Sullivan* (1901), 26 Ind. App. 60, 59 N. E. 37. By recourse to the foregoing propositions, we have here a situation where appellant, with

5. knowledge of the existence of facts and circumstances constituting a breach of warranty, as indicated, failed to elect to declare the contract of insurance void, or to forfeit all rights of the insured and beneficiary thereunder, but on the contrary, with knowledge aforesaid, collected and retained assessments for about sixteen months. Under such

circumstances, it must be held that appellant at the decease of the insured had waived said breaches of warranty, and was estopped to assert the invalidity of the contract of insurance. See *Supreme Tribe, etc.* v. *Lennert* (1912), 178 Ind. 122, 131, 98 N. E. 115; *Supreme Tent, etc.* v. *Volkert* (1900), 25 Ind. App. 627, 643, 57 N. E. 203; *Brotherhood, etc.* v. *Moore* (1905), 36 Ind. App. 580, 76 N. E. 262; *Supreme Court, etc.* v. *Sullivan, supra; Farmers Mut. Fire Ins. Co.* v. *Jackman, supra; Dromgold* v. *Royal Neighbors* (1913), 261 Ill. 60, 103 N. E. 584; *Modern Woodmen, etc.* v. *Brecken-ridge* (1907), 10 L. R. A. (N. S.) 136, note. See, also, *Trot-ter* v. *Grand Lodge, etc.* (1906), 132 Iowa 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533, where the decisions are collected and reviewed. See, also, authorities *pro* and *con* cited in 2 Bacon, Ben. Soc. and Life Ins. (3d ed.) §434a.

The fact that appellant's laws provided that no officer, employe or agent of the Sovereign Camp or of any camp, has the power, right or authority to waive any of the provisions thereof or any of the conditions upon which certificates are issued, is not controlling. On this subject, this court in *Union, etc., Ins. Co.* v. *Whetzel* (1902), 29 Ind. App. 658, 665, 65 N. E. 15, said: "The stipulation in the policy that none of its terms could be modified or changed except in a specified manner could itself be waived by the company either expressly or by the conduct of the company. * * * Although a policy may provide that an agent shall have no power to waive a forfeiture, yet the company may estop itself, by its conduct, from denying the grant of such powers to him." See, also, *Farmers Mut. Fire Ins. Co.* v. *Jackman, supra,* 15; *Supreme Court, etc.* v. *Sulli-van, supra. Dromgold* v. *Royal Neighbors, supra,* deals with a fraternal beneficiary society of the general nature of appellant here. In that case, one of the laws of the company, very similar to §69 above quoted, was involved. There the court said: "Restrictions upon the power of an agent of an

insurance company to waive any of the conditions of the contract or upon the manner of such waiver are themselves conditions of the contract, which may be waived the same as any other condition of the policy. * * * It has been held by this court that the doctrine of waiver applies not only to insurance companies having a capital stock, insuring for pecuniary benefit, but also to mutual benefit associations. * * * The nature and objects as well as the organization and government of such associations render the application of general rules of law in most cases the same in mutual benefit associations not organized for pecuniary profit as in insurance societies organized for pecuniary profit." See, also, *Majestic Life Ins. Co.* v. *Tuttle* (1915), 58 Ind. App. 98, 107 N. E. 22; *Modern Woodmen, etc.* v. *Coleman* (1902), 64 Neb. 162, 89 N. W. 641; *Pringle* v. *Modern Woodmen, etc.* (1906), 76 Neb. 384, 107 N. W. 756, 113 N. W. 231; *Shotliff* v. *Modern Woodmen, etc.* (1903), 100 Mo. App. 138, 73 S. W. 326.

It is urged that said certificate was invalid on account of informalities attending its issue. The facts are as follows:

8. Section 51 of appellant's laws provides that all beneficiary certificates shall be signed by certain officers of the sovereign camp, attested by the corporate seal, and countersigned by the consul commander and clerk of the local camp. Section 55 provides that the clerk shall not accept any payments except entrance fees, from an applicant until the certificate has been so countersigned. Section 58 provides that liability of the sovereign camp on a certificate shall not begin until the certificate has been issued and delivered, certain payments made, and the applicant obligated or introduced by a camp or an authorized deputy in due form. The informality is as follows: (1) The certificate contains a printed statement that the applicant has made all payments required, and has been introduced as a member of the camp. Under date of November 9, 1903, this statement is signed by the consul commander, but is not signed by the clerk. It

was issued under the seal of the camp, and bears the signature of the clerk as a witness to the signature of the insured to the warranty features of the certificate. (2) The clerk testified, without contradiction, that the insured was not initiated or introduced to the camp on the evening of November 9, or at any subsequent meeting. There was evidence that the consul commander took possession of the certificate on the evening of November 9, and some evidence that he was a "deputy". There was no evidence whether the insured was "obligated and introduced" by an authorized deputy. Assuming that these irregularities are material, then, as indicated, it is conceded that the certificate was delivered and that it was thereafter in the possession of the insured or the beneficiary; that all preliminary payments were made, and all assessments and dues paid; the insured was at all times treated as a beneficiary member of the camp. The clerk collected assessments and remitted them to the sovereign camp, with full knowledge of said irregularities. After the decease of the insured, the clerk took possession of the certificate with the representation that it was necessary in order that appellee might receive her money thereon. He required her to make proof of the death, and collected from her $5 to pay the expense of the same. Are these facts sufficient to show a waiver of such informalities? The decisions apparently are not uniform on this question. In *Caywood* v. *Supreme Lodge, etc.* (1908), 171 Ind. 410, 86 N. E. 482, 131 Am. St. 253, 23 L. R. A. (N. S.) 304, 17 Ann. Cas. 503, the certificate as a condition to its validity required that it be countersigned by certain officers. It appearing that the certificate had not been so countersigned, the court held it to be invalid, saying, however: "It may be that the requirement that the same be countersigned by some person or persons named, may be waived by the company, but there can be no presumption from the mere possession thereof, when it has not been countersigned in the manner required." This language was used in passing on the sufficiency of the com-

plaint, which was held to be bad, among other reasons, because it contained no averments showing such a waiver. In *Wagner* v. *Supreme Lodge, etc.* (1901), 128 Mich. 660, 87 N. W. 903, a by-law required an initiation as a condition to the delivery of the policy. Where such formality had been omitted, the court said: "When, in the absence of fraud a policy of insurance is issued in violation of such provisions of the by-laws, those provisions are waived and the policy is valid. * * * The issue of a certificate is evidence that prior conditions have been complied with, or, if not complied with, that they have been waived; and, in the absence of fraud, it is proof of the member's good standing." See, also, *Shartle* v. *Modern Brotherhood, etc.* (1909), 139 Mo. App. 433, 122 S. W. 1139; *Lakka* v. *Modern Brotherhood, etc.* (1913), 163 Iowa 159, 143 N. W. 513, 49 L. R. A. (N. S.) 902, and cases *pro* and *con* cited and collected in note; *Whitcomb* v. *Phoenix Mut. Life Ins. Co.* (1879), 29 Fed. Cas. No. 17,530. We hold that the facts show a waiver of the formalities, the omission of which is urged. Some other questions respecting the validity of the certificate are argued, but, as indicated, they are not presented by the issues. The evidence sustains the validity of the beneficiary certificate.

On the subject of fraud, in inducing and procuring the settlement, the evidence is by no means conclusive. There was evidence tending to show that such settlement was

9. induced by the statements and representations of certain of appellant's officers and agents, and especially by one of its field examiners charged with the duty of investigating the claim. The jury in answer to an interrogatory found that such statements were not true, correct or in accordance with the facts. The general verdict includes a finding in appellee's favor on the issue of fraud. We should not feel warranted in setting out the substance of the evidence bearing on this question. It is sufficient to say that the evidence in this respect was sufficient to make a case properly submitted to the jury, and under such circumstances,

it is not within the prerogative of this court to interfere with the verdict.

The court's action in giving and also in refusing a large number of instructions is challenged as error. While it perhaps would be more satisfactory to the parties should we take up these instructions and discuss them in detail, yet to do so would lengthen this opinion beyond justification. In the main and in so far as concerns the substantial questions arising under the instructions, the field is covered in our discussion of the sufficiency of the evidence. As a rule, the court in charging the jury, and in disposing of tendered instructions, followed the law as we have outlined it herein. There are certain inaccuracies in the instructions which, however, are rendered harmless, either by the answers of the jury to interrogatories, or by the state of the evidence. In certain general instructions the court perhaps overstepped the issues, but if so, appellant may not complain as the same infirmity exists in instructions tendered by it. However, we call special attention to instruction No. 15, given by the court on its own motion, which is as follows: "If you should find for the plaintiff, then I instruct you that the plaintiff's husband, having died in the second year after the issuing of the policy, the defendant was only liable for the sum of $1,500, and from this should be deducted the $300 already paid to plaintiff, and to which residue, to wit, $1,200, you may add interest at the rate of 6 per cent from the date of payment of said sum of $300 until this date, and said sum, to wit, $1,200 and interest would be the amount of recovery."

The amount of the verdict indicates that the jury followed this instruction. The instruction does not state the proper measure of recovery, and it was error to give it. The action is not based on the contract of insurance. Its theory is to recover damages for the alleged fraud in procuring the settlement. In such form of action the measure of damages is the difference between the amount received in the settlement

and the actual value of the thing surrendered. The value of the thing surrendered is not necessarily equivalent to the face value of the contract of insurance. While doubtless the face value of the thing surrendered should enter into consideration in determining its actual value, yet there are other elements that can not be ignored. Among such other elements are the questions of whether, aside from the fraud, there was in fact a dispute respecting the validity of the thing surrendered; whether the compromise was entirely induced by the fraud, or whether the fraud was merely effective in reducing the amount paid. In assessing the damages much must be left to the sound discretion of the jury, from a consideration of all the evidence bearing on that question, and under proper instructions by the court. For full discussion, see *Supreme Council, etc.* v. *Apman* (1907), 39 Ind. App. 670, 80 N. E. 640. The decision in the case cited is based in part on *Gould* v. *Cayuga County Nat. Bank* (1885), 99 N. Y. 333, 2 N. E. 16. However, although

11. appellant in its motion for a new trial assigns excessive damages as one of the causes therefor, in its brief it directs no point to such cause, and in no other manner complains of the amount of recovery. Such cause for a new trial is, therefore, waived, and it must be considered that assuming a right to recover at all, appellant is not dissatisfied with the amount of the verdict. Under such circumstances, both the Supreme Court and this court seem to be committed to the rule that error in an instruction on the measure of damages is not available. *Pittsburgh, etc., R. Co.* v. *Macy* (1915), *ante* 125, 107 N. E. 486, and cases cited. In the case cited, error in the assessment of the amount of recovery, if any, was waived by a failure to assign it in the motion for a new trial. Here it is waived by a failure to discuss it in the brief.

Appellant assigns as error the overruling of its motion to set aside the court's ruling on the motion for a new trial, and to permit appellant to be heard in argument thereon.

The court did not err in this respect. Under the practice, the right to be heard in argument on a motion for a new trial does not exist. The question of the necessity or advisability of such argument in any case must be left to the trial court. It may be said in addition that the record shows the parties present by counsel at the ruling on the motion for a new trial, and that appellant reserved an exception to such ruling. Neither in the entry of the ruling on the motion for a new trial, nor otherwise in the record does it appear that appellant made any objection to the court's disposing of such motion without argument heard, and it must, therefore, be presumed that appellant consented thereto. Having consented, appellant can not now be heard to object.

Questions are discussed respecting the court's rulings in admitting and excluding certain items of evidence and offered evidence. There was no error in such rulings.

We find no error in the record calling for a reversal. Judgment affirmed.

NOTE.—Reported in 107 N. E. 749. As to the law of mutual benefit associations, see 19 Am. St. 784. See, also, under (2) 29 Cyc. 68; (3) 29 Cyc. 86: (4) 29 Cyc. 89; (5) 29 Cyc. 193, 188, 244; (6) 29 Cyc. 186; (7) 29 Cyc. 188; (8) 29 Cyc. 190, 193, 194, 244; (9) 3 Cyc. 348; (11) 3 C. J. 1412; 2 Cyc. 1014; 3 Cyc. 388; (12) 29 Cyc. 1006; (13) 3 C. J. 873; 2 Cyc. 707.