**Donald L. TENER,
Respondent-Appellant,**

v.

**Dollie TENER, Petitioner-Appellee.**

No. 3–1078A277.

Court of Appeals of Indiana,
Third District.

Aug. 5, 1980.

GARRARD, Presiding Judge.

This action for marriage dissolution was filed by the wife in the LaPorte Circuit Court. It was referred to the probate commissioner, IC 29–2–4–1, who heard the evidence and arguments of counsel and reported his findings to the court.

The findings disclosed that the marriage was irretrievably broken and that there were no children. For property division the commissioner found that the wife should be granted the marital dwelling and should assume the balance of the mortgage indebtedness thereon; that their personal property and bank accounts should be divided and the specifications for accomplishing this; and that the husband "should be entitled to an alimony [sic][1] judgment as part of the property settlement agreement in the sum of $8,268, payable instanter and bearing interest at the legal rate until paid."

On the same day this report was made, the judge of the LaPorte Circuit Court adopted it and incorporated it into a final dissolution decree. Husband filed a timely motion to correct errors which was referred to the probate commissioner. He then moved before the commissioner that the argument be heard by the circuit judge. The commissioner denied this motion and subsequently found that the motion to correct errors should be denied. On the date this report was made the Honorable J. Patrick Smith, sitting as judge pro tempore of the LaPorte Circuit Court, adopted it and denied the motion to correct errors.

The husband appeals. Initially he challenges the propriety of the procedures involving the probate commissioner and the judge pro tempore. He also attacks the determination of property rights.

The wife asserts the husband has waived any challenge to the probate commissioner's denial of his request that the circuit judge hear argument on the motion to correct errors and to the propriety of the judge pro

Arthur L. Roule, Jr., Roule & Raelson, LaPorte, for respondent-appellant.

John J. Davie, LaPorte, for petitioner-appellee.

1. The use of the term "alimony judgment" is not technically correct. *Goodwill v. Goodwill* (1978), Ind.App., 382 N.E.2d 720. However, it is clear that the award was a present property division. This method of property division is authorized under our current dissolution statute. *Liszkai v. Liszkai* (1976), 168 Ind.App. 532, 343 N.E.2d 799.

tempore entering the order denying the motion to correct errors. She contends waiver occurred because neither point was raised in the motion to correct errors.

■ Of course, neither claim could have been advanced in the original motion to correct errors. Both incidents occurred after the motion was filed and were indeed addressed to the manner in which it was handled. Thus, the real question is whether it was incumbent upon the husband to file a second or supplemental motion to correct errors to preserve these questions for appellate review. We believe the purpose and spirit of *P-M Gas & Wash Co. v. Smith* (1978), Ind., 375 N.E.2d 592 dictate that such an additional motion was unnecessary so long as a timely objection was properly made in the proceedings. *Cf. Continental Casualty Co. v. Novy* (1979), Ind.App., 397 N.E.2d 294; Indiana Rules of Procedure, Trial Rule 59(E), (F) as amended January 1, 1980.

■ The husband first asserts that TR 63(A) required the judge rather than the probate commissioner to hear argument on the motion to correct errors.[2] In support of this contention he cites *Watkins v. McPeak* (1968), 143 Ind.App. 537, 241 N.E.2d 800 which held that within the meaning of former Supreme Court Rule 1–9, a probate commissioner was not a judicial officer that could sign a bill of exceptions for a transcript.

We find this argument unpersuasive. TR 63(A) should be construed as compatible with rather than contrary to the remainder of the rules and the procedural statutes if such a construction is plausible. The main thrust of the rule is to govern the respective duties of regular trial judges and their replacements or successors. *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978), Ind.App., 372 N.E.2d 742; 4 W.

Harvey & R. Bruce Townsend, Indiana Practice, Rules of Procedure Annotated 329. It states the general preference that the judge who presided at a trial or hearing should consider any subsequent motions related thereto. As such it does not directly address the proper reference of a case to a commissioner.

Trial Rule 53 does consider those cases referred to a master, and defines that term to include a commissioner.[3] TR 53(E)(2) makes specific provision enabling a party who is dissatisfied with a master's report in a non-jury action such as this one, to present the issue before the judge. It states,

"In an action to be tried without a jury the court shall accept the master's decision or his findings of fact unless clearly erroneous. Within ten [10] days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rules 5 and 6. The court after hearing may adopt the report or may reject it in whole or in part or may receive further evidence or may re-commit it with instructions."

■ In the present case the husband filed no objections to the probate commissioner's report and thus failed to follow the appropriate procedure to invoke a hearing before the judge. This, however, did not result in automatic approval of the report or the waiver of husband's rights to challenge the result for errors of law. As with the substantially similar federal rule, the trial court must still determine whether the report is clearly erroneous before accepting it. *See* 9 Wright & Miller, Federal Practice and Procedure 806. In approving the report

---

**2.** In salient part the rule provides, "The judge who presides at the trial of a cause . . . shall, if available, hear motions and make all decisions and rulings required . . . after the trial or hearing is concluded . . . .."

**3.** TR 53(F) provides that "nothing in the rule shall affect laws providing for the appointment

and duties of probate commissioners" as occurred here pursuant to IC 29-2-4-1. We read this provision as an expression that such statutes were not intended to be superseded by the rule, but that where the statute is silent, the rule applies to the procedure to be followed by such commissioners.

and entering judgment thereon, the judge performs the necessary judicial act.

This effect is repeated in the ruling upon a motion to correct errors. The motion was properly filed with the court. Undoubtedly there are many occasions where the regular judge will and should simply consider the motion, with or without conducting a hearing thereon, and rule upon it. Yet where the evidence has been heard by a master and issues raised in the motion relate thereto, it is certainly consistent with the purposes of TR 63(A) and within the court's discretion to refer the motion, or so much thereof as relates to such matters, to the master who heard the evidence for his consideration and report.

■ When, as here, such a report is sought and received the judge must still perform the necessary judicial act of granting or denying the motion. However, under our decisions he may do this, i. e., rule upon a motion to correct errors, without the necessity of actually holding a hearing or permitting counsel oral argument. *Wheeler v. State* (1902), 158 Ind. 687, 63 N.E. 975; *Sovereign Camp of the Woodmen of the World v. Latham* (1915), 59 Ind.App. 290, 107 N.E. 749; Trial Rule 73.

■ The husband further contends, however, that it was improper for the judge pro tempore rather than the regular judge to enter the order denying the motion to correct errors.

He acknowledges the power of a judge pro tempore to act in accord with Trial Rule 63(A) if the judge who presided at the trial or hearing is unavailable by reason of death, sickness, absence or unwillingness to act. However, he points out that in such cases the rule provides that, "[t]he unavailability of any such trial or hearing judge shall be determined and shown by a court order made by the successor judge at any time." Clearly such an order should have been entered in this case. With equal clarity, the amendment to former Rule 1–9 which permits such an entry to be made "at any time" demonstrates that the entry itself is not a prerequisite to jurisdiction and

that the amendment was intended to alter the result of *Baniszewski v. State* (1970), 256 Ind. 1, 261 N.E.2d 359. *See* Civil Code Study Commission Comments to Trial Rule 63, 4 W. Harvey & R. Bruce Townsend, Indiana Practice, Rules of Procedure Annotated 328.

We must presume that the court acted properly and within its jurisdiction. Although the order referred to has apparently not been entered, neither has the husband presented us in accord with AR 7.2(C) any addition to the record suggesting that the regular judge was available nor has he so asserted in his brief.

Under these circumstances we must deem the defect to be merely a technical one within the purview of Trial Rule 61 and Appellate Rule 15(E). Accordingly, no reversal may be had upon these grounds. *Compare, also, Wilhelm v. Ryband* (1939), 215 Ind. 281, 19 N.E.2d 551.

■ Husband next attacks the finding of the probate commissioner that he should be entitled to an alimony [sic] judgment "as part of the property settlement *agreement.*" Husband complains that nowhere in the record is there any evidence of a property settlement agreement, thus making the commissioner's decision "clearly contrary to the evidence." Wife does not dispute that there was no property settlement agreement. We agree with her, however, that the commissioner's use of the term "agreement" was probably inadvertent and is in any event mere surplusage. The final dissolution decree entered by the circuit court judge, which is the judgment actually being appealed, omits any reference to an agreement. It states, "That the husband is hereby awarded an alimony [sic] judgment as part of the property settlement in the sum of $8,268.00, . . . ."

■ Husband's final specifications of error relate to the propriety of the property settlement recommended by the probate commissioner and adopted by the trial judge. Therefore, we will consolidate them for purposes of review. The marital assets of the parties were relatively small, the

major item being the Fish Lake marital dwelling and real estate. Essentially, husband contends that it was error to grant wife the house and land, having a net worth of $38,250, and for him to be awarded an "alimony judgment" of only $8,268.00. At the time of the dissolution decree, the following statutory guidelines were in effect for dividing marital property,

"Sec. 11. Disposition of Property. In an action pursuant to section 3(a), the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one (1) of the spouses and requiring either to pay such sum as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale.

In determining what is just and reasonable the court shall consider the following factors:

(a) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(b) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(d) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(e) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

IC 31–1–11.5–11 (1976) (amended 1979).

In reviewing a property division, the appropriate standard to be employed by an appellate court was summarized in *In re Marriage of Dreflak* (1979), Ind.App., 393 N.E.2d 773, 775,

"When considering the propriety of a property division, this Court does not weigh the evidence, but examines the division only for an abuse of discretion. *Wilcox v. Wilcox* (1977), Ind.App., 365 N.E.2d 792; *In re Marriage of Lewis* (1977), Ind.App., 360 N.E.2d 855; *Geberin v. Geberin* (1977), Ind.App., 360 N.E.2d 41. The court has broad discretionary power in determining the disposition of property. *Eppley v. Eppley* (1976), Ind.App., 341 N.E.2d 212. IC 1971, 31–1–11.-5–11 merely requires the court to divide the property 'in a just and reasonable manner.' The court is not required to divide the property equally between the parties. *In re Marriage of Dougherty* (1978), Ind.App., 371 N.E.2d 1328; *Trimble v. Trimble* (1976), Ind.App., 339 N.E.2d 614.

'The standard employed by our appellate courts in such a review is whether the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences that might be drawn therefrom. *In re Marriage of Miles* (1977), Ind.App., 362 N.E.2d 171; *Geberin v. Geberin* (1977), Ind.App., 360 N.E.2d 41.' *In re the Marriage of Osborne* (1978), Ind.App., 369 N.E.2d 653."

In the present case, the parties took out a series of mortgage loans to cover the costs of the extensive remodeling work that was done on their house. It appears that husband performed most of the labor himself and used his own earnings to pay off these loans, leaving a balance at the time of trial of $4400. However, under subsection (a) of IC 31–1–11.5–11, we cannot ignore the wife's contributions to the acquisition of the property. The house was originally purchased with money from a joint bank

account, the bulk of which was comprised of proceeds from the sale of a restaurant business, an asset which wife brought into the marriage. In addition, while husband's money may have been used to make the mortgage payments, home fuel payments, insurance payments, and property taxes, wife testified that her income was used to pay the electric and telephone bills, for groceries, and for clothing for their children from previous marriages. Thus, wife's earnings helped in maintaining the home. Furthermore, she stated that she withdrew money from her individual savings account for the purpose of "building on the house."

Subsection (e) permits us to consider the earning ability of the parties. At the time of trial, wife was employed at Plas-Steel Products in Walkerton, Indiana. Although she did not testify as to her current salary, husband did introduce into evidence the couple's joint tax returns for the years 1966 through 1973 inclusive. These returns show that during those years in which wife worked for Plas-Steel Products, she earned an average of just over $5,700. On the other hand, during that same time period in which husband worked for his current employer, Bendix Corporation, he earned an average of a little more than $9,200. Husband also testified that he was employed part time at Myer's Detective Service. His compensation there was not revealed. However, it appears from the evidence above that husband's overall earnings were about twice that of his wife. In addition, husband, age 53, owned vested pension rights from his 18 years of service with Bendix. Upon reaching the age of 65, he was to receive $180 monthly.[4] This amount was to increase as husband continued to work for Bendix.

Subsection (c) allows us to examine the economic circumstances of a spouse at the time the property division is to become effective. Here, wife was 55 years old and under a doctor's care for high blood pressure. Her income was about half that of her husband's, and she had only about $500 in the bank.

Lastly, subsection (d) includes as a relevant factor for our consideration the conduct of the parties during the marriage as related to the dissipation of their property. When the couple was first married, they possessed several joint bank accounts and, as wife put it, "everything was together." However, it was her uncontradicted testimony that because of husband's spending habits, "taking too much money out of the bank all of the time," they had to open individual bank accounts instead with each being responsible for certain expenses.

Taking all of these factors together, we cannot say that the property division clearly discloses an abuse of discretion.

Affirmed.

HOFFMAN and STATON, JJ., concur.

---

4. While this pension plan may not be subject to division, it is still a factor that may be considered in dividing existing marital property.

Hiscox v. Hiscox (1979), Ind.App., 385 N.E.2d 1166.