PUBLIC SAVINGS INSURANCE COMPANY *v.* MANNING, ADMINISTRATOR.

[No. 8,935. Filed March 15, 1916.]

1. INSURANCE.—*Life Insurance.*—*Action on Industrial Policy.*—*Premiums Paid by Agent of Insurer.*—*Evidence.*—*Sufficiency.*—Where an industrial policy provided that benefits should be paid if the insured died while premiums were not in arrears exceeding

four weeks, and that no agent could alter or change the contract, evidence showing an agreement for temporary payment of premiums by the agent of insurer/on behalf of plaintiff, that subseqently the insurer's superintendent called at plaintiff's home and informed him that the policy was still in force and advised him to pay the premiums, that pursuant to such advice plaintiff saw the agent and told him he could resume payment, that such agent called the following Monday and collected one weekly premium on the policy and entered the payment on a book furnished by insurer to plaintiff for that purpose, together with testimony of the agent from which it appeared that he had personally paid plaintiff's premiums in an amount sufficient to extend the policy beyond the date of the death of plaintiff's child, on whose life it was issued, was sufficient to support a verdict for plaintiff as against the theory that the policy had lapsed.  pp. 241, 245.

2.  INSURANCE.—*Life Insurance.—Industrial Policy.—Forfeiture.— Premiums.—Payment by Agent of Insurer.—Effect.*—Where the agent of insurer, on being advised by plaintiff that he was unable to pay the weekly premiums on an industrial policy on the life of his child agreed temporarily to pay the premiums for plaintiff, such agreement merely created an agency as between plaintiff and such agent and was not binding on the insurer; but to the extent that such agent in fact paid premiums, they must be deemed paid.  p. 244.

3.  INSURANCE.—*Life Insurance.—Waiver of Provisions in Policy.— Acts of Agent.*—Although an industrial policy on plaintiff's child provided against waiver of any of its provisions except by indorsement signed by the president, vice president, secretary or medical director of the company, a verdict for plaintiff was not precluded even if the evidence were held to show a failure to keep the premiums paid as required by the policy, in view of evidence showing that after the time when the policy was alleged to have expired, defendant's superintendent of agents called at plaintiff's home to discuss the policy and assured plaintiff that the policy had not lapsed and that it was only necessary for plaintiff to resume payment of the premiums, that thereafter plaintiff paid a premium and was given credit therefor in a book provided by defendant for such purpose, and that plaintiff, though at the time entitled to have the policy reinstated, was not advised by such superintendent or by the agent to whom he subsequently paid the premium that such course was necessary, since under the evidence the acts of such supintendent and agent must be deemed a waiver of the provision against forfeiture.  pp. 246, 248, 249.

4.  INSURANCE.—*Restrictive Provisions.—Enforcement.*—Restrictive provisions in a contract of insurance are not literally enforced by the courts regardless of the attending circumstances.  p. 247.

5.  INSURANCE.—*Provisions in Policy.—Waiver.*—Restrictive provisions in a policy of insurance, being for the benefit of the company, may be waived by it: and, since oral contracts of insurance

are as valid as if in writing, such provisions may be waived verbally. p. 249.

6. INSURANCE.—*Provisions in Policy.—Waiver.*—Since a corporation can act only by agent, it follows that a provision in a policy of insurance limiting the power of agents, or providing how the contract may be modified, may be waived by an agent expressly authorized to that end, or by an agent whose authority may be implied from the nature of the agency, a course of dealing or the nature of the business transacted. p. 249.

7. INSURANCE.—*Life Insurance.—Industrial Plan.—Forfeitures.*— In view of the nature of industrial insurance and the class of people with whom the company deals in issuing such policies and collecting the premiums thereon, courts are justified in seizing hold of and giving effect to slight circumstances in order to prevent a forfeiture, where the forfeiture, if enforced, must be based upon some provision inserted in the contract for the benefit of the insurer. p. 253.

From Rush Circuit Court; *John D. Megee,* Judge.

Action by William E. Manning, adminstrator of the estate of Maxie W. Manning, deceased, against the Public Savings Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Eugene C. Miller, Benjamin F. Miller, Watson, Titsworth & Green* and *Korbly & New,* for appellant.

*Will M. Sparks* and *A. L. Gary,* for appellee.

CALDWELL, J.—This appeal is from a judgment in the sum of $291.34, recovered by appellee on an industrial insurance policy issued on the life of his daughter. To discuss in detail the large number of questions presented is not required. The merits of the case may be determined with substantial accuracy from a consideration of the sufficiency of the evidence to sustain the verdict. The facts are as follows: May 22, 1911; appellant issued an industrial policy on the life of each of appellee's children. Only one of such policies is

VOL. 61—16

involved here. It was issued on the life of Maxie
W. Manning, aged twelve years. By its terms appellant obligated itself in effect to pay as benefits on
the decease of the insured the sum of $280, in consideration that there should be paid on each Monday the sum of ten cents premium for the week then
commencing, and subject to the conditions of the
policy as printed thereon. These conditions were
to the following effect; that the policy should be
void if payments were not made as specified; that
premiums were payable at the home office of the
company, but might be made to any authorized
representative; if the insured should die while
premiums were in arrears not exceeding four weeks,
benefits would be paid; if the policy should lapse for
the nonpayment of premiums, it might be renewed
within one year from the date to which premiums
had been paid, on payment of all arrears, provided
evidence of the insurability of the insured satisfactory to the company should be furnished. The
seventh condition is as follows:

> "No condition, provision or privilege of this
> policy can be waived or modified in any case
> except by an endorsement hereon signed by the
> president, the vice president, the secretary
> or medical director. No agent has power in
> behalf of the company to make or modify this
> contract of insurance, to extend the time for
> paying the premium, to waive any forfeiture, or
> to bind the company by making any promise
> not contained herein."

James Kratzer was appellant's agent for Rush
County, and was located at Rushville. As such
agent, he was authorized to solicit insurance, industrial and ordinary, and to collect and remit premiums. He solicited the insurance involved here, and
collected the premiums. It is alleged in an answer

that Samuel R. Sadler was a superintendent of the company, and that he was "an authorized representative of the company". He testified as a witness that he was a superintendent and that his duties were "to superintend the work in a general way", and that the Rushville agency was under his superintendency.

Appellee made the weekly payments on all the policies up to and including the payment of December 11, for the week ending December 18, 1911. He then notified Kratzer that by reason of failing health and lack of employment, he would be unable to continue. Kratzer, however, at his own suggestion, agreed to continue the payments for appellee temporarily. Kratzer testified that under such arrangement he made the payments weekly from December 18, up to and including the payment of April 29, for the week ending May 6, 1912, at which time appellant claims the policy lapsed. Later Sadler called at the Manning home, the date being in controversy. He testified that the visit was made May 30 or 31. Other witnesses fixed the date as June 8. Sadler testified that he informed Mrs. Manning that the policy involved here was within the four weeks period of grace, and that a payment the following Saturday would keep it in force. A witness who was present testified that Sadler said on the subject of whether the policy had lapsed: "You are not out at all; you are in, and go ahead and pay and you are all right." Mrs. Manning testified that Sadler said "you are not out of it; I am the superintendent, and I know"; that it would be all right if they paid; that he did not specify when they should pay or the amount; that he simply said for them to see him Saturday night, or that they could see Kratzer the next week. Appellee testified that he met Kratzer on the street Tuesday of the next

week, being June 11, and informed him that he had employment and that he could resume his payments; that Kratzer called on him the next Monday morning, June 17, and collected forty cents, ten cents on each policy, and entered the payments on a book which appellant had delivered to appellee for that purpose; that Kratzer said at the time that he had paid $10.40 for appellee, being twenty-six weekly payments on each policy. This statement was not contradicted by Kratzer as a witness. He testified that it was in the latter part of May that appellee notified him he would soon be able to resume the payments, and that on May 28, a day or two later, he reported all the policies to the superintendent as lapsed; that a few days before June 17, appellee asked him to call Monday, and he would commence paying; that he did call as requested on Monday, June 17, and Manning paid him forty cents, being ten cents on each policy, which he credited in Manning's book; that while nothing was said on the subject of renewing the policies or the necessity therefor, he did not send this money to the company as a weekly payment, but subsequently on his own motion, and after the death of the insured, he applied it in renewal of the other three policies. The insured was taken sick suddenly the evening of June 17, and died the next morning. A day or two later Kratzer informed Manning that the policy had lapsed. Later, at Kratzer's suggestion, Manning signed revival applications on the other policies, the necessary payment being made by Kratzer, who on his own motion, applied the forty-cent payment to that end.

The arrangement by which Kratzer agreed temporarily to pay the premiums on the policies was not binding on appellant. That was a mere

2. private agreement between appellee and Kratzer, whereby the latter became noth-

ing more than appellee's agent. To the extent that Kratzer did in fact pay the premiums, they must be deemed paid. To the extent that he failed to pay, the default was appellee's through Kratzer as his agent. *Bennett* v. *Sovereign Camp, etc.* (1914), 168 S. W. (Tex. Civ. App.) 1023. If Kratzer made no payments on the policy after April 29, six payments amounting to sixty cents were in arrears at the decease of the insured on the policy involved here, or $2.40 on the four policies. This sum appellee tendered before commencing this action, being the full amount that appellant claimed was in arrears. If Kratzer paid $10.40 on the policies, as appellee testified he stated in the transaction of June 17, no payments were in arrears at the decease of the insured. Several days after the death of the insured, there was a meeting at which were present appellee, his attorney, Kratzer and Sadler, and at which the status of the policy was discussed. Kratzer, as a witness, testified that at this meeting he stated that he had paid for appellee and forwarded to the company $10.40 on all the Manning policies. He further testified, however, in explanation of such statement that he paid but $8.00 or $8.40 in discharge of premiums on the four policies issued May 22, 1911, and that the balance including the forty cents paid by appellee June 17, was applied on revival expenses. His explanation is, however, not clear, and is somewhat self-contradictory. As we have indicated, Kratzer, in paying premiums for appellee, did so as his agent. In the transaction of June 17, however, he was acting in the capacity of agent for appellant. In that capacity and within the scope of his authority, he called to collect premiums. No other business was transacted. The subject of the conversation then had was the status of the policies rather

than the state of his account with appellee. Appellee was seeking information, not with a view to a settlement with Kratzer personally, but with a view to the payment then to be made on the policies. Appellee's testimony that Kratzer then said that he had paid $10.40 for twenty-six weeks was properly heard, and should be considered as substantive evidence. *Snyder* v. *Frank* (1913), 53 Ind. App. 301, 309, 101 N. E. 684, and cases; *Anvil Mining Co.* v. *Humble* (1894), 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; *Scott* v. *Home Ins. Co.* (1881), 53 Wis. 238, 10 N. W. 387. In such view of the case, there is evidence to sustain the verdict, that is, there is some evidence that payments were not in arrears at the decease of the insured. The answers to certain interrogatories returned with the general verdict indicate that the jury took that view of the case.

But if such statement should be considered, not as an admission respecting the actual status of the policies, but merely as an inaccurate declaration of a nature likely to affect the conduct of appellee, then the case presents another view. From such viewpoint it may be assumed that no payments were in fact made after April 29. As we have said, it is alleged in appellant's answer relating to Sadler's visit to appellee's home, that he was "an authorized representative of the company". Thus, respecting the matter in hand, he was apparently clothed with power to act. He had full knowledge that no payments had been made on the policies since April 29. Under such circumstances, he stated in substance that the policies had not lapsed, and urged that they be kept in force, and to that end directed appellee to Kratzer, and thus clothed the latter with apparent authority to deal with the situation. After giving such directions, and on the same day, Sadler discussed the

Manning policies with Kratzer. There was evidence that appellee within the time specified by the superintendent saw Kratzer and notified him that he was ready to resume the payments. The next Monday, June 17, Kratzer called on appellee to collect premiums on the policies. If payments were in arrears at that time, appellee by the terms of the policies had a right to take steps to revive them. Kratzer had full knowledge from appellant's standpoint that no payments had been made since April 29, and that he himself had reported the four policies as lapsed. By virtue of the arrangement between him and Kratzer, appellee did not know the real situation. Under such circumstances, Kratzer was silent respecting the real status of the policies, and stated affirmatively in effect that they were in force. He also treated the policies as in force by collecting premiums and crediting them as such. By his silence, and also by his affirmative statement, he caused appellee to take exactly the step he would have taken had the policies in fact been in force. Under such circumstances, if this cause involved the personal interests of Sadler and Kratzer, we do not doubt that they should be held to have waived the forfeiture of the policy involved here, and to be estopped from asserting that it had lapsed prior to the decease of the insured. Our problem here is to determine whether such waiver and estoppel should be extended to appellant by reason of the conduct of Kratzer and Sadler. Such problem involves a consideration of the restrictive provisions of the policy. These provisions are (1) that no condition of the policy can be waived, except by endorsement thereon, signed by designated officers; (2) that no agent has power to waive a forfeiture.

4. Restrictive provisions in a contract of insurance are not literally enforced by the courts

regardless of the attending circumstances. For illustrative cases, see the following: *Supreme Court of Honor* v. *Sullivan* (1901), 26 Ind. App. 60, 59 N. E. 37; *Supreme Tent, etc.* v. *Volkert* (1900), 25 Ind. App. 627, 57 N. E. 203; *Bixler* v. *Modern Woodmen, etc.* (1911), 112 Va. 678, 72 S. E. 704, 38 L. R. A. (N. S.) 571; *Richardson* v. *Brotherhood, etc.* (1912), 70 Wash. 76, 126 Pac. 82, 41 L. R. A. (N. S.) 320. The case last cited is analagous to the case at bar, both in its facts and also by reason of the existence in each case of a provision of the contract which literally applied would prevent a recovery. There the insured was suspended for default in the payment of an assessment. An application for reinstatement made through the local body was rejected by the supreme body, and report to that effect returned to the local body. The latter however led the insured to believe that he had been reinstated, accepted dues paid by him, and remitted them to the supreme body. The latter refused to accept the dues as such, but placed them to the general credit of the local body, and notified it accordingly. Subsequently the insured was injured. In a suit to recover therefor, it was held the supreme body was estopped to deny a right to recover, the basis of the decision being that the supreme body was chargeable with the acts and conduct of the local body as agent, although the by-laws provided that the latter was agent for the insured, rather than for the insurer. In the course of the opinion the following language is used: "This court has consistently and steadfastly adhered to the view that it will not permit an insurance company, whether it be an old line company or a fraternal organization, to change the fundamental law of agency by contract, and thus exonerate itself from liability for the acts of those who are in fact

and law its agents." It is well settled that such pro-
visions of a contract of insurance being made
5.   for the benefit of the company, may be
waived by it. *Majestic Life Assur. Co.* v.
*Tuttle* (1915), 58 Ind. App. 98, 107 N. E. 22;
*Farmers Mut. Fire Ins. Co.* v. *Jackman* (1905),
35 Ind. App. 1, 73 N. E. 730; *Sovereign Camp, etc.* v.
*Latham* (1915), 59 Ind. App. 290, 107 N. E. 749;
*Home Fire Ins. Co.* v. *Wilson* (1915), 176 S. W.
(Ark.) 688. Oral contracts of insurance con-
taining the essential elements are as valid as if in
writing. *Ohio Farmers Ins. Co.* v. *Bell* (1912), 51
Ind. App. 377, 99 N. E. 812. It follows that
though the contract be in writing, provisions
thereof subject to waiver may be waived verbally.

A corporation can act only through some
6.   agency. The waiver as accomplished in any
particular instance will be manifested by the
act of such agency. As indicated, a provision speci-
fying the manner in which the contract of insur-
ance may be modified or limiting the power of
agents, may be waived by the corporation. It
follows that such corporation through and by the
act of an agency may waive such limiting provision,
if such agency be expressly authorized to that end,
or if such authority may be implied from the nature
of the agency, a course of dealing or the nature of
the business transacted. See *Sovereign Camp, etc.* v.
*Latham supra*, and cases; *Gish* v. *Insurance Co.*
(1905), 13 L. R. A. (N. S.) 826, note.

The following language is used in *Southern
States Fire Ins. Co.* v. *Vann* (1915), 69 Fla. 549, 68
South. 647: "The clause in the fire insurance
3.   policy placing a limitation on the power
of any officer, agent or other representative
of the company in the waiver of any provision or
condition in the policy does not supersede the law

making the principal liable for the negligent, wrongful or fraudulent act of its agent, or the law of equitable estoppel, and this clause of limitation may itself be waived by the company through its agent acting within the apparent scope of his authority. * * *. An insurance company can not make its local agent the medium through which all the benefits of a policy flow from the insured to it, and then deny that he has authority to represent it when the benefits of the insured are involved". See, also, *Glens Falls Ins. Co.* v. *Michael* (1907), 167 Ind. 659, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708; *Humbold Fire Ins. Co.* v. *Ashby* (1915), 57 Ind. App. 682, 108 N. E. 150; *Farmers Mut. Fire Ins. Co.* v. *Jackman, supra; Germania Fire Ins. Co.* v. *Barringer* (1914), 43 Okl. 279, 142 Pac. 1026; *Western Nat. Ins. Co.* v. *Marsh* (1912), 34 Okl. 414, 125 Pac. 1094; *Pacific Mut. Life Ins. Co.* v. *McDowell* (1914), 42 Okl. 300, 141 Pac. 273.

Sadler's apparently broad powers are indicated by the comprehensive term "superintendent". It is conclusively admitted by the pleadings that he called at appellee's home as "an authorized representative of the company". His mission was to adjust the situation involving the policy here. He testified without contradiction or explanation, as we have said, that his duties were to superintend the business in a general way. The Rushville agency was within his jurisdiction. With full knowledge that the policy was subject to forfeiture, and that it had been reported as lapsed, he opened up negotiations whereby it might be kept in force. There was evidence, not without contradiction respecting details, that he referred appellee to Kratzer to that end. He thereby accredited Kratzer. Kratzer thereupon collected a premium and in so doing led appellee to believe that the policy was in force.

After the decease of the insured, this premium was remitted to the company and is yet retained by it. True, the premium, after the decease of the insured, was, through the agency of Kratzer, applied to other purposes, but there was no evidence that appellee either knew of or consented to such application. There was evidence also that appellant prior to the commencement of this action had knowledge that such premium was paid as a premium. By these facts, appellant, in our judgment is estopped to deny liability on the policy. See *Majestic Life Assur. Co.* v. *Tuttle, supra; Mutual Indemnity Co.* v. *Thompson* (1907), 83 Ark. 575, 104 S. W. 200, 119 Am. St. 149, 10 L. R. A. (N. S.) 1064, note. Moreover, what Kratzer said and did was more comprehensive in form than as indicating a mere waiver of the forfeiture. Under the uncontradicted evidence, his language was such as to lead appellee to believe that a liability to forfeiture had not been incurred. The effect of his statement was that he had made payments to date for appellee. As we have said, Kratzer sustained a dual relation to appellee. Within a certain field, he was appellee's agent; within another field he was appellant's agent. If he failed to make the payments, he failed as appellee's agent. In view of the business being transacted, if he misrepresented the facts as to payments made, he did so as appellant's agent. Appellee knew the facts only as he gathered them from Kratzer. If appellee be chargeable with knowledge of the provisions of the policy limiting Kratzer's powers, he did not know Kratzer was exceeding such powers as so limited. Kratzer by merely misrepresenting the facts to appellee did not violate the limiting conditions of the policy. True, however, his *ex parte* action was likely to lead to such result. His conduct in that respect should

therefore be measured by the ordinary rules of agency. Certain language used in *Jones* v. *Prudential Ins. Co.* (1913), 155 S. W. (Mo.) 1106, is worthy of consideration here. In that case, James, appellee's soliciting agent, procured to be issued to Lang an industrial policy. It contained a provision that it should be void if assigned. James knew when it was issued that it was to be assigned to Jones. Lang, by a writing on the policy, assigned it to Jones "subject to the approval of the Prudential Insurance Company". James verbally sanctioned the assignment, and regularly collected the premiums thereafter, and delivered them to the company which accepted them in ignorance of the assignment, except as James had knowledge thereof. In a suit brought on the policy by Jones after Lang's death, the court in holding that a waiver by the company should be predicated on James' knowledge and conduct, uses the following language: "Moreover, in answer to the suggestion, that it is not competent, as a rule, for a mere soliciting agent to either waive such a condition of the policy or estop the company thereabout, the nature and character of the business and the authorized duties of such agents are to be considered. As before stated, the business of industrial insurance is conducted principally among people of the poorer classes, many of whom are illiterate and but slightly informed concerning intricate business matters. * * * These agents call upon the patrons of the company weekly, make collections, and enter credit therefor in the book of the insured, and seem to have general supervision pertaining to such matters within the immediate debit. To the people with whom they deal, such agents are justly regarded as representatives of the company, with complete power touching the performance of the duties which they daily

exercise in their presence". In view of the nature of industrial insurance and the class of people with whom the company deals in issuing such

7. policies and collecting the premiums thereon, courts are justified in seizing hold of and giving effect to slight circumstances in order to prevent a forfeiture, where the forfeiture if enforced must be based upon some provision of the contract inserted for the benefit of the insurance company. *Farmers Mut. Fire. Ins. Co.* v. *Jackman, supra,* 17, and cases.

The evidence, although to some extent contradictory, is sufficient to sustain the verdict. Without specifically considering other questions presented, it is sufficient to say that the case was tried without material error. Judgment affirmed.

NOTE.—Reported in 111 N. E. 945. As to effect of limitations on an agent's authority to waive conditions in an insurance policy, see 2 Ann. Cas. 112; 9 Ann. Cas. 380. As to waiver of provision in a life insurance policy premium after appointed time, or similar act, see 7 Ann. Cas. 385. See, also, under (1) 25 Cyc 870, 871; (3, 5) 25 Cyc 861; (4) 25 Cyc 739; (6) 25 Cyc 860; (7) 25 Cyc 740.