TRAVELERS INSURANCE COMPANY *v.* EVISTON, ADMINISTRATOR.

[No. 16,596. Filed November 14, 1941. Rehearing denied December 23, 1941.]

144

146

*Frederick P. Bamberger* and *Edmund F. Ortmeyer,* both of Evansville, for appellant.

*French Clements,* of Evansville, for appellee.

BEDWELL, J.—In this action, after trial by jury, the appellee recovered a judgment against the appellant for the sum of $2,998, for the death of appellee's decedent, Flora E. Shelton, which occurred on the 8th day of August, 1938, as a result of certain accidental injuries received by her on such date.

The appellant is relying upon the overruling of its motion for a new trial as reversible error. The grounds thereof upon which it relies are as follows:

1. The verdict of the jury is not sustained by sufficient evidence.

2. The verdict of the jury is contrary to law.

In addition to the above grounds appellant properly specifies claimed error of the trial court in giving instructions Nos. 1 and 5 of the court's own motion, and instructions 3, 5, 6, 7 and 11, requested by the appellee, and in refusing to give instruction No. 1, requested by the appellant.

The evidence is largely without dispute. Much of it was the result of stipulation by the parties, but from the record the following facts are deduced: On the 1st day of August, 1938, Roy Shelton and his wife, Flora E. Shelton, lived in the town of Andrews, Indiana. On such date they started on a trip to visit the son of Roy Shelton who lived at Watertown, South Dakota, and since they were going to travel on a particular train it was necessary for them to get reservations at Logansport, Indiana, and present them at the ticket office in the Union Station in Chicago, Illinois, for validation. They arrived at the ticket office in the Union Station in Chicago at about 6:15 in the morning of August 1, 1938. Roy Shelton was then approximately 81 years of age and his wife, Flora E. Shelton, was 72 years and one day of age. They went to a ticket window in such station to get their reservation but the proper agent was not there at the time. Another ticket agent, who was also an agent of appellant, requested that they come back in ten or fifteen minutes. When they did so the agent, who was also an agent of appellant, obtained instructions by telephone and made the reservations for them. He asked them about their trip and

asked if they wanted to carry a policy of insurance during the same, and told them that if they were going to be gone for only ten days that he could make them a special rate on a policy for such time. They agreed to take the policies and he prepared a separate policy for Roy Shelton and one for his wife, Flora E. Shelton; he told Mr. Shelton and his wife that he was making them a special price because they were taking two policies. He put the two policies in one envelope, collected for the same and handed them to Roy Shelton, who, without examination, placed them in his pocket where he carried them, without examination, until after the accident to his wife happened. This agent did not ask Roy Shelton or his wife how old they were and he said nothing about any age limitations being in the policies, but both Roy Shelton and his wife were present before the agent executed and delivered the policies so that he had full opportunity to form a conclusion from their personal appearances concerning their approximate ages.

Shelton and his wife went to Watertown, South Dakota, where Mrs. Shelton fell down a stairs on the 8th day of August, 1938, and injured herself so that she died. After her death an examination was made of the insurance policies delivered to Roy Shelton and it was discovered that they contained the following clause: "This insurance does not cover any person under 18 or over 70 years of age."

A claim was made for the amount of insurance specified in the policy issued to Flora E. Shelton, but the appellant denied liability on the ground that she was more than seventy years of age at the time the policy was issued. When the policy was issued to Flora E. Shelton, she signed a written application which was presented to her by appellant. The stub of such appli-

cation contained a direction to the agent not to issue a policy to persons under eighteen or over seventy years of age and contained a blank space for the agent to insert the age of the applicant after the words "age of applicant." In this particular case the agent did not fill the blank space for "age of applicant" but filled all other blanks in the application and the stub.

After the death of Flora E. Shelton, appellee was appointed administrator of her estate and on the 25th day of October, 1938, such administrator accepted a return of a sum of $2 that was paid as premium for the policy issued to his decedent and then executed an instrument denominated a "Release," which was as follows:

"$2.00              RELEASE
                                Huntington, Indiana
                                  October 25, 1938
    "Received of The Travelers Insurance Company of Hartford, Connecticut, the sum of two and no/100 dollars ($2.00) as a full return of premiums paid said Company on accident ticket policy, registry number 5610, agency number 5457, issued to Flora E. Shelton of Andrews, Indiana.
    "Said ticket policy, registry number 5610, agency number 5457, is hereby surrendered and The Travelers Insurance Company is hereby forever released from all liability thereunder.
                                "Ovid E. Eviston, Adm.
                                Flora E. Shelton"

The evidence showed that on the date of its execution an agent of appellant called upon the administrator for the purpose of obtaining the release. There was "quite a bit of discussion," and the agent told the administrator that "the courts had always decided in favor of the companies in circumstances of this kind," and, "the policy was not valid, and the courts had always ruled with the companies on these kind of cases." He conveyed the idea to the administrator that the age of his

decedent would bar the collection of the insurance under the policy. He did not disclose to the administrator any information about the conditions under which the policy was issued. The administrator had not listed the policy as an asset of the estate of Flora E. Shelton and without the taking of any court proceedings or the obtaining of approval by the court, he delivered the policy to the agent and signed the instrument heretofore set forth.

The legal contentions of appellant supporting its claim of error in overruling its motion for a new trial are summarized as follows:

(1)   That the interpretation of the policy of insurance in question is governed by statutory law of Illinois; that the policy was an Illinois statutory standard form policy, and that the statute of such state prevents a waiver by the insurer of the provisions concerning age contained therein.

(2)   That the evidence in the cause was insufficient to show express or implied waiver by insurer of age limitations contained·in the policy.

(3)   That to invoke the doctrine of waiver in this cause would subject the insurer to liability for a risk that was not included in the contract of insurance, but which was expressly excluded therefrom.

(4)   That the evidence was insufficient to show fraud or lack of consideration for the release executed by appellee, and that the appellee had legal right to execute the same and release the appellant from liability on the policy, without the approval of the court in which the administration of Flora E. Shelton's estate was pending.

We agree with appellant that the interpretation and determinaton of the validity of the contract of insurance must be governed by the laws of the State of Illinois. The evidence showed that the policy in question was solicited, signed, delivered and

the premium therefor paid in one transaction that took place at the Union Station in the City of Chicago. There is nothing in the policy providing for performance at a place other than that where the contract was made, and the complex questions that sometimes arise where such condition exists, are not here involved.

In interpreting contracts of insurance in cases involving a conflict of laws, where the parties are in different jurisdictions, a contract of insurance is deemed to be executed at the place where the last act is done which is necessary to complete the transaction and bind both parties. The general rule is that the state in which the application is made, the premium paid, and the policy delivered is the place where the contract is entered into. *Waddell* v. *New England, etc., Ins. Co.* (1925), 83 Ind. App. 209, 147 N. E. 816; *Hartliep Transit Co.* v. *Central Mut. Ins. Co.* (1936), 288 Ill. App. 140, 5 N. E. (2d) 879; *Mutual Life Ins. Co.* v. *Johnson* (1934), 293 U. S. 335, 79 L. Ed. 398, 55 S. Ct. 154; 11 Am. Jur., Conflict of Laws, § 107, p. 390.

Appellant contends that the policy in question was issued under and that it is governed by the provisions of § 470, ch. 73, Vol. 5 of Callaghan's Ill. Statutes, Ann., which is the same as Sec. 970, ch. 73 of Smith-Hurd Ill. Statutes (Perm. Ed.) and is a part of ch. 73, secs. 467 to 481, Ill. Rev. Statutes 1935. The policy contained this provision:

"20. The insurance under this Policy shall not cover any person under the age of eighteen years nor over the age of seventy years. Any premium paid to the Company for any period not covered by this Policy will be returned upon request."

It is appellant's contention that such provision was required by the aforesaid Illinois statute, and that the second sentence of such provision, which requires the

insurer to return upon request premiums paid for any period not covered by the policy, excludes or prevents the application of the doctrine of waiver. We do not agree with appellant in its interpretation of the particular statute of the State of Illinois or in its construction of the effect thereof upon the insurance policy in question. This particular statute regulates the form and contents of policies that are issued by insurers doing an accident or casualty insurance business in the State of Illinois. It requires certain standard provisions to be inserted in such policies, and also sets forth certain optional standard provisons which may be inserted at the option of the insurer. The provision concerning age limits, which we have heretofore quoted, was an optional standard provision provided for by such statute. The statute further provides for a signed written application for such insurance, which must be attached to or indorsed upon the policy, and any alteration of the written application by erasure, insertion or otherwise, without the written consent of the insured, is made a misdemeanor. The statute does not provide that a policy that is issued in violation of the statute shall be invalid. It specifically provides that such a policy shall be valid, but that it shall be construed as provided for in the act. We find nothing in the statute that expressly or impliedly prevents the waiver by the insurer of the optional standard provision concerning age limits. If the insertion of such provision, in a printed form of insurance policy, is optional with the insurer, then it should be optional with him to waive it after it has been so inserted, when such waiver is not prohibited by statutory enactment. The requirement that the insurer shall return excess premiums paid by an insured does not prevent or effect a waiver of age limits contained in the policy.

The next question for determination is the sufficiency of the evidence to show express or implied waiver or estoppel of the insurer to rely upon the clause concerning age limitations. Technically, there is a distinction between "waiver" and "estoppel." A waiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment. But in the law of insurance, the distinction between "estoppel" and "implied waiver" is not easy to preserve, and, quite commonly, in insurance cases, the courts have found it unnecessary or inadvisable to make a distinction between them and have used the terms interchangeably. The doctrines of "waiver" and "estoppel" extend to practically every ground upon which an insurer may deny liability. They apply to provisions and statements contained in the application or the policy concerning the age of the insured. *Fidelity & Casualty Co.* v. *Meyer* (1912), 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493; *McArthur, Admr.* v. *Home Life Ass'n* (1887), 73 Iowa 336, 35 N. W. 430.

In the recent case of *Beddow* v. *Hicks* (1940), 303 Ill. App. 247, 255, 257, 25 N. E. (2d) 93, 97, the Appellate Court of the State of Illinois lays down legal principles affecting "waiver" or "estoppel" of an insurer, that are applied by the courts of such state, in the following language:

"An insurance company may waive any conditions or provisions inserted in the policy for its benefit and such waiver may be expressed or implied, which may arise from acts, words, conduct, notice or knowledge on the part of the insurer. . . .

"An insurance company that knowingly takes a premium for a policy under conditions that would render it invalid, will not be permitted to say that

it is not a binding contract for that reason. In all such cases the company will be regarded as having the same knowledge of the conditions and situation of the property as is possessed by the agent transacting the business for it."

The Supreme Court of this State, in the case of *Ohio Farmers Ins. Co.* v. *Vogel* (1906), 166 Ind. 239, 245, 76 N. E. 977, has asserted the same principles in the following language:

"There is nothing mysterious or peculiarly venerable about the ordinary insurance policy, with its long list of provisions and conditions of defeasance. All these, and singular, must be construed like similar provisions in other written instruments, upon sound and well-established principles—principles that support the integrity of the contract, and that forbid an insurer from taking the money of another for a policy which he knows at the time of delivery contains a provision which, under the facts, will enable him to avoid it, if a loss occurs. Such provisions in insurance policies have been before the courts a great many times, and, so far as we have observed, courts have everywhere, in the absence of fraud, refused to enforce a condition of forfeiture in favor of an insurer who has knowledge of the condition broken when he delivered the policy."

Appellant insists that the ticket agent who issued the policy to appellee's decedent had no authority to waive any of its provisions and that the evidence is insufficient to show waiver by the appellant itself. Attention is called to the following standard provision contained in the policy:

"2. No statement made by the applicant for insurance not included herein shall avoid the Policy or be used in any legal proceedings hereunder. No agent has authority to change this Policy or to waive any of its provisions. No change in this Policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon."

It is appellee's contention that under the first sentence of such standard provision, that if appellant had inquired concerning the age of appellee's decedent and had been informed by her that she was seventy-two years and one day of age, but had neglected or refused to insert such statement concerning her age in the application, which is a part of the policy of insurance, that then it could not take advantage of the fact that her age exceeded the limitation provided for by the policy, and that appellant by failing to inquire concerning her age, is bound in the same manner that it would have been bound had it inquired. It is appellant's contention that the second sentence of such standard provision prevented the agent of appellant from waiving the clause concerning age limits contained in the policy.

Although there is some difference in the rules that are followed in different jurisdictions, the rule that is well supported by authorities and by reason, and that has been followed by the courts of this State and of the State of Illinois, is that policy provisions which limit the power of insurance agents or other representatives of the insurer to waive conditions of the policy or restrict the manner in which waivers may be made, do not supersede the recognized principles of the law of waiver and estoppel, and are not conclusive so as to prevent the officers or agents of the insurer through whom it must act in the transaction of its business from binding the insurer by waiver of such a condition or restriction. In other words, a nonwaiver clause may itself be waived. *Public Savings Ins. Co.* v. *Manning* (1916), 61 Ind. App. 239, 111 N. E. 945; *Aetna Ins. Co.* v. *Indiana Nat. Life Ins. Co.* (1922), 191 Ind. 554, 563, 564, 133 N. E. 4, 22 A. L. R. 402; *Germania Life Ins. Co.* v. *Koehler* (1897), 168 Ill. 293, 48 N. E. 297.

In the case of *Public Savings Ins. Co.* v. *Manning, supra,* this court says at p. 249:

> "As indicated, a provision specifying the manner in which the contract of insurance may be modified or limiting the power of agents, may be waived by the corporation. It follows that such corporation through and by the act of an agency may waive such limiting provision, if such agency be expressly authorized to that end, or if such authority may be implied from the nature of the agency, a course of dealing or the nature of the business transacted."

In applying the rule that a nonwaiver clause may itself be waived, the question naturally arises as to what agents of the insurer may effect such a waiver. It is generally held that a general agent or agent having authority to issue and collect for policies may effect a' waiver against the insurer despite the existence of a nonwaiver clause in the policy. *Phenix Ins. Co*. v. *Hart* (1894), 149 Ill. 513, 36 N. E. 990; *Phenix Ins. Co.* v. *Grove* (1905), 215 Ill. 299, 74 N. E. 141; *Continental Ins. Co.* v. *Bair* (1917), 65 Ind. App. 502, 114 N. E. 763, 116 N. E. 752; *Hanover Fire Insurance Company* v. *Dole* (1898), 20 Ind. App. 333, 50 N. E. 772. General insurance agents having apparent authority to issue contracts of insurance without reference to the home office are empowered, where the insured does' not have or cannot be deemed to have notice of any limitations of the power of the agent in such respect, to waive conditions of forfeiture in such policies; and' their knowledge is the knowledge of the insurer, notwithstanding any excess of actual authority. *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651, 71 N. E. 897; *Metropolitan Life Ins. Co.* v. *Willis* (1906), 37 Ind. App. 48, 76 N. E. 560; *Niemann* v. *Security Benefit Assn.* (1932), 350 Ill. 308, 183 N. E. 223.

The agent of appellant who issued the policy to appellee's decedent was a general agent within the definition above set forth. He had power to issue the policy and collect the premium without reference to the home office and he had apparent authority over the amount of premium that would be charged. The exhibits introduced into evidence, and particularly Exhibit No. 3, indicated that the agent made monthly reports of policies issued and sent to the home office unused coupons; but there is no evidence that appellant ever made any objection because its issuing agent failed to obtain the age of the insured, nor does appellant introduce any evidence showing any limitations upon the power or authority of its agent who issued the particular ticket policy, except such as were contained in the policy itself.

We believe that the evidence was sufficient to permit the jury to determine that the appellant had waived the provisions of its insurance policy concerning age limits. There is no reason to believe that either appellant, or its agent who wrote ticket accident policies for it, were engaged in the fraudulent business of issuing policies of accident insurance to aged persons who were ignorant that they contained an age limitation, for the purpose and with the intention of collecting premiums and of then escaping liability if the insured was injured and was of an age that was not covered by the terms of the policy. This provision concerning age limits was optional with the insurer; it evidently had vested its issuing agent with broad powers, for the evidence showed that he discussed with the insured and her husband the making of special premium rates if they should take two policies, and he delivered the policies and collected the premium without conferring with the home office or any other agent. Under such circumstances it

is a reasonable inference from all the evidence that the appellant had vested him with authority, either expressly or by implication, to waive the provisions concerning age limits. The agent was required to send in the stub to the home office in which the age of the applicant was supposed to be inserted. The fact that he did not insert such age and that there is no evidence that the appellant made any objection because he failed to insert the same, would indicate that he had authority to waive the same.

But appellant insists that there is no evidence that its agent had actual knowledge of the age of the insured and that there must be actual knowledge by an insurer of the existence of a cause producing a forfeiture before there can be a waiver. The rule that whatever puts a person on inquiry amounts, in law, to notice of such facts as an inquiry pursued with ordinary diligence and understanding would have disclosed, is applicable to charge an insurer with notice. This is in line with the general rule followed by a majority of the courts, that the principal is charged with the knowledge of that which his agent, by ordinary care, could have known, where the agent has received sufficient information to awaken inquiry. 29 Am. Jur., Insurance, Sec. 809, p. 615; *National Life & Acc. Ins. Co.* v. *House* (1937), 104 Ind. App. 403, 9 N. E. (2d) 133.

It is true that the doctrine of implied waiver or of estoppel is not available to bring within the coverage of an insurance policy, risks that are not covered by its terms, or that are expressly excluded therefrom. *Kentucky Cent. L. & A. Ins. Co.* v. *White* (1939), 106 Ind. App. 530, 19 N. E. (2d) 872. This means simply that by the application of the doctrine of implied waiver or estoppel the policy that provides in-

demnity for a broken arm could not be broadened so as to cover indemnity for some other injury not covered thereby, or that a policy which by its express terms excludes death by suicide, could not be broadened by the application of waiver or estoppel to cover such cause of death. But in general the doctrines of waiver and estoppel extend to practically every ground upon which an insurer may deny liability. Here the insurer was denying liability on the ground that the insured was not of the age provided for in the policy.' This has nothing to do with the extension of the terms of the policy so as to cover risks not covered or expressly excluded therefrom. By the application of the doctrine of waiver in this cause, covered risks remain the same.

Lastly, appellant contends that the evidence was insufficient to show fraud or lack of consideration for the release executed by appellee, and that the appellee had full power and authority to execute the same, without approval of the court in which the administration of the estate of appellee's decedent was pending. The evidence was undisputed that the release was executed by appellee without court approval. If court approval was necessary to the validity of such release, then it is not necessary to consider the sufficiency of the evidence to show fraud. But in connection with appellant's attack upon the sufficiency of the evidence to show fraud in the obtaining of the release, we might point out that, in our opinion, appellant has overlooked the fact that the representation made by the agent of appellant to the appellee, that the policy in question "was invalid," was really a representation made to a citizen of Indiana concerning the validity of the policy under the law of the State of Illinois. As a general rule representations as to the law of a foreign state are regarded as representations of fact. *Travelers*

*Protective Assn.* v. *Smith* (1915), 183 Ind. 59, 69, 107 N. E. 283, Ann. Cas. 1917E, 1088. We call attention to the following cases which discuss the matter of representations of nonliability made by an insurer's agent in securing a release of a claim under an insurance policy as constituting such fraud as will permit avoidance of the release. *McLean, Administrator* v. *Equitable Life Assurance Society of the U. S.* (1885), 100 Ind. 127, 50 Am. Rep. 779; *Farmers' & Mech. Life Ass'n v. Caine* (1907), 224 Ill. 599, 79 N. E. 956; *Madison Trust Co.* v. *Helleckson* (1934), 216 Wis. 443, 257 N. W. 691, 96 A. L. R. 992; for additional cases see Annotation in 96 A. L. R. 1001 to 1013.

At the trial of the cause the court gave instruction No. 11, requested by the appellee, which was as follows:

"You are instructed that if you find by a fair preponderance of all the evidence and under the instructions given you that the contract of insurance sued upon was never listed as a part of the assets of the estate of Flora E. Shelton, and that the Huntington Circuit Court had no record of the insurance contract here in controversy, and that it made no orders in reference to the insurance contract here in controversy, and that the estate of Flora E. Shelton obtained no benefit from the delivery and obtaining the release between the plaintiff and defendant, then you are instructed that the release here in evidence delivered by the plaintiff to the defendant was not binding upon the estate of Flora E. Shelton."

The insurance under this particular policy was payable solely to the insured. The policy specifically provided that all of the indemnities thereof were payable to the insured, or in the event of the death of the insured, that the company would pay a specified amount in lieu of any other indemnity to the executors, administrators

or assigns of the insured. Under the terms of such policy the proceeds of such insurance became assets of the estate of appellee's decedent and were available to the claims of creditors. *Hamilton* v. *Darley* (1915), 266 Ill. 542, 107 N. E. 798.

The settlement of any claim for the recovery of such insurance between the administrator of the insured and the appellant was governed by the provisions of § 6-912, Burns' 1933, which read as follows:

> "Where any debtor of a deceased person shall be unable to pay the whole or any part of the demand or claim of such person, or is insolvent or in doubtful circumstances, or where any legal or equitable defense is alleged against such debt or claim, the executor or administrator, with the approbation of the proper circuit court, or judge thereof in vacation, may compound with such debtor, and give him a discharge, upon receiving the avails agreed upon in such compounding or upon the payment of the same being sufficiently secured."

Appellant calls attention to the cases of *Latta* v. *Miller, Administrator* (1887), 109 Ind. 302, 10 N. E. 100, and *McCleary* v. *Chipman* (1904), 32 Ind. App. 489, 68 N. E. 320, as decisions of the Supreme and this court holding that an administrator has the power and authority to assign or release debts due the estate of his decedent if done without fraud or collusion, subject only to his liability on his bond for any loss that may occur by reason of his mismanagement of such debts. Whatever may be the holding of such cases, in as far as they do hold that an administrator has the power or authority to compromise or compound debts due the estate which he represents, which debts are assets of the estate for the payment of creditors, without the approval of the court in which the administration of such estate is pending, the same are, by implication, if not expressly, overruled by the Supreme Court in the

case of *Pittsburgh, etc., R. Co.* v. *Gipe* (1903), 160 Ind. 360, 365, 366, 65 N. E. 1034. We are of the opinion that the appellee administrator had no power to compromise and release his claim upon the insurance policy in question without approval of the court having jurisdiction of his decedent's estate. Under such circumstances, it is not necessary to discuss the sufficiency of the evidence of fraud or any instructions concerning fraud or lack of consideration that pertained to such release.

Appellant objects to the giving by the trial court to the jury of its instruction No. 1. This instruction sets forth, in substance, the allegations of the complaint, answer and reply, and informed the jury where the burden of proof as to the complaint and answer lay. The objection of appellant to the instruction is that it does not clearly set forth all the facts that were stated by both paragraphs of appellee's complaint. The instruction is not peremptory in nature nor does it mislead the jury by causing it to believe that the court is setting forth all of the material allegations of either the complaint or of the answers. If the appellant desired a more complete instruction it was its duty to tender same.

Appellant objects to certain other instructions that were given by the court of its own motion or that were given after the same were tendered by appellee, but what we have said heretofore in this opinion covers appellant's objections to such instructions. It is not necessary to consider the same.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 37 N. E. (2d) 310.