Henry FARBER and Sam Levy, Third-Party Plaintiffs, Appellants,

v.

GREAT AMERICAN INSURANCE COMPANY, Third-Party Defendant, Appellee,

No. 16877.

United States Court of Appeals Seventh Circuit.

Feb. 13, 1969.

Rudolph Tanasijevich, Hammond, Ind., George W. McCain, David N. Gilyan, Gary, Ind., for appellants.

William S. Spangler, John P. McQuillan, Spangler, Jennings, Spangler & Dougherty, Gary, Ind., for appellee.

Before CASTLE, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

CASTLE, Chief Judge.

This appeal arises out of a diversity action brought by Norman and Elva Esau against Henry Farber and Sam Levy for damages suffered by the Esaus

in an automobile accident which occurred in Gary, Indiana on December 11, 1965. Farber and Levy then filed a third party complaint against Great American Insurance Company, alleging that the company was required to defend them and was liable for any amount recovered by the Esaus against them.

This allegation by the third party plaintiffs (appellants) was based on the issuance by the insurance company of two policies, both of which were sold through the Oberdorfer-Lazerwitz Insurance Agency by one Harry Cohen. The first of these policies covered the Chevrolet Corvair automobile which was involved in the accident while Farber was driving it, and had been issued to Mr. Farber's wife, Helen, who regularly drove the car. This car was owned by Levy, who had furnished it to Mrs. Farber, his niece, to drive. The second policy covered a Dodge automobile which was owned and regularly driven by Mr. Farber.

In the first count of their third party complaint, Farber and Levy alleged that the policy on the Chevrolet automobile, which indisputably would have covered the appellants' loss, was in effect at the time of the accident. The insurance company, on the other hand, claimed that this policy had been effectively cancelled. The second count of the third party complaint alleged that the policy on the Dodge automobile covered Farber while driving the Chevrolet. The third party plaintiffs and the third party defendants both moved for summary judgment and the District Court found for the latter on both counts.

The first general issue on appeal is whether the notice of cancellation of the Chevrolet policy was effective. The pertinent clause of the policy reads as follows:

"CANCELLATION * * * This policy may be cancelled by the company by mailing to the insured named in Item 1 of the Declarations at the address shown in this policy written no-tice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. * * *"

The District Court found that, pursuant to this clause, the Insurance Company, on November 23, 1965, mailed a notice of cancellation to Helen Farber at the address shown in the policy stating that the policy would be cancelled on December 2, 1965 at 12:01 a. m. The Court also found that Mrs. Farber never received the notice. Although this latter finding is uncontested, the appellants contest the basis of the former finding on the ground that the affidavits filed by the insurance company in support of its motion for summary judgment were allegedly not in compliance with Rule 56(e), Federal Rules Civil Procedure.[1]

The affidavits in question were of two employees of the insurance company. The affidavit of Mary Karris stated that she prepared a notice of cancellation in triplicate, signed the original, and addressed it to Mrs. Farber at the address shown in the policy. She then attached a carbon copy of the notice to the sealed envelope containing the original and gave them to Clarence Neumann for mailing. The other copy apparently went to the insurance agent, Harry Cohen. Neumann's affidavit states that he received the envelope and attached copy from Mrs. Karris and took them to the United States Post Office in Chicago, Illinois, signed the certificate of mailing on the copy, presented the sealed envelope to the Post Office personnel and obtained a Post Office stamp on the signed carbon copy, a photocopy of which was attached to his affidavit.

Contrary to the contention of appellants, we find no hearsay or other defect in these affidavits, and no impeachment in the deposition of Neumann taken by appellants. Mary Karris swore to the contents of the envelope and Neumann swore to the mailing of the envelope. Taken together, there was sufficient evi-

1. A motion to strike portions of the affidavits on this ground was denied.

dence to support the District Court's finding that the notice of cancellation was in fact mailed to Mrs. Farber.

■ Appellants next contend that even if the notice of cancellation was mailed, the fact that it was not received renders it ineffective. This argument, however, flies in the face of the language of the insurance contract which provides: "The mailing of notice as aforesaid shall be sufficient proof of notice." In State Farm Mutual Automobile Insurance Company v. Perrin, 331 F.2d 565, 568 (7th Cir. 1964), this Court dealt with an Indiana insurance contract containing almost the identical language. In holding that mailing of the notice alone, without actual receipt of such notice, was sufficient to effectively cancel the policy, this Court stated:

"The validity of this particular type of clause has been widely considered and has almost unanimously been upheld. As the Illinois Appellate Court said:

'The rule supported by the great weight of authority is that the express terms of the contract make the notice of cancellation sufficient when deposited, and that the provision being unambiguous, must be enforced by the courts as written.'

"County of Williamson v. Standard Accident Ins. Co., 32 Ill.App.2d 363, 365, 178 N.E.2d 149, 150 (1961). We agree with the District Judge that the cancellation clause is not ambiguous or vulnerable to a charge of double meaning." 331 F.2d at 568.

Appellants' attempt to distinguish *Perrin* on the ground that the insured in that case was found to have actively avoided the receipt of mail for approximately one month, whereas in the instant case there was no allegation of such avoidance. We do not believe, however, that this distinction has any legal significance. The *Perrin* case [2] based its decision not on the culpability of the insured in avoiding the mails, but in the express contractual obligations assumed by the parties. Where, therefore, the parties specifically provide that the mailing of notice without more is sufficient proof of notice, and where such mailing was proved, they will be held to the contract and the notice of cancellation will be effective.

Appellants next argue that since the notice of cancellation did not comply with the terms of the contract, in that it designated less than the ten days fixed by the policy before the policy would expire, it was ineffective. There appear to be two opposing views taken by those courts which have considered this question. The majority view, adopted by 26 states, holds that a notice of cancellation which purports to cancel a policy of insurance at a time earlier than that fixed by the policy becomes effective after the lapse of the time so fixed.[3] The minority view, on the other hand, holds that strict compliance with the notice provision is required, making a defective notice of cancellation completely ineffective. This latter view is held by only four states.

■ Since the courts of Indiana, the state in which this suit arose and whose laws we must therefore apply,[4] had not, at the time the case was before the court below, dealt specifically with this subject, the District Court was bound to ascertain which view the state would probably adopt. The Court below, after discussing this matter at some length, found that "the majority rule is the better reasoned rule and that the Indiana Courts would probably follow it." We agree.

In fact, since the District Court rendered its opinion in the instant case, the Appellate Court of Indiana has adopted

---

2. See also Seaboard Mut. Cas. Co. v. Profit, 108 F.2d 597, 599, 126 A.L.R. 1105 (4th Cir.1940), discussed *infra*.

3. See 96 A.L.R.2d 286, 290, for an extensive annotation on this subject.

4. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

the majority view in Moore v. Vernon Fire & Casualty Insurance Co., Ind.App., 234 N.E.2d 661, 663 (March 14, 1968). As the law of Indiana now stands, therefore, we are bound to apply the majority rule.

We are not persuaded, moreover, by appellant's argument that to so hold where no actual notice was received would be contrary to the rationale behind notice of cancellation provisions in insurance contracts, as expressed in *Moore,* which is "to enable the insured to obtain insurance with some other company prior to the time when he is exposed to further risks without insurance protection." 234 N.E.2d at 663. The Fourth Circuit in Seaboard Mutual Casualty Company v. Profit, 108 F.2d 597, 599, 126 A.L.R. 1105 (4th Cir. 1940), dealt with precisely the same issue. There, as in the insant case, the notice failed to comply with the time provision of the policy and was mailed but not actually received by the insured. In holding that the notice became effective upon the lapse of the period required by the contract, the Court held:

> "It is manifest that a notice, which fully complies with the time interval in the policy, if mailed but not received, furnishes no greater actual notice to the insured than a notice defective in point of time, and it is equally clear that a defective notice, if received and construed to take effect only after the lapse of the full time, gives precisely the same protection as a notice which is correct in its contents. The insured has agreed to accept delivery to the post office as delivery to himself, and he runs the same risk and has the same advantage whether the notice mailed is perfect in form or is one which, though defective, will be so construed by the courts a to give him the advance notice of cancellation which the company has promised." 108 F.2d at 599.

The Fourth Circuit re-affirmed this decision in the later case of Wright v. Grain Dealers National Mutual Fire Insurance Company, 186 F.2d 956, 960 (4th Cir. 1950).

Upon the foregoing reasoning, therefore, we hold that the notice of cancellation became effective ten days from its mailing. Since this was before the accident took place on December 11, 1965, the policy on the Chevrolet automobile afforded no protection to the appellants.

The next general issue concerns appellant's allegation that the policy on the Dodge automobile covered Mr. Farber while driving the Chevrolet. The pertinent provisions in the Dodge policy are as follows:

PART I—LIABILITY

\*    \*    \*    \*    \*    \*

PERSONS INSURED. The following are insureds under Part I:

(a) with respect to the owned automobile

> (1) the named insured and any resident of the same household,

\*    \*    \*    \*    \*    \*

(b) with respect to a non-owned automobile

> (1) the named insured.

\*    \*    \*    \*    \*    \*

DEFINITIONS: Under Part I:

"named insured" means the individual named in Item I of the declarations and also includes his spouse, if a resident of the same household.

\*    \*    \*    \*    \*    \*

"OWNED AUTOMOBILE" means

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

(b) a trailer owned by the named insured,

(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period provided

> (1) it replaces an owned automobile as defined in (a) above, or

> (2) the company insures all private passenger, farm and utility

automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within thirty days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

(d) a temporary substitute automobile.

"TEMPORARY SUBSTITUTE AUTOMOBILE" means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

"NON-OWNED AUTOMOBILE" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;

\* \* \* \* \* \*

PART IV—PROTECTION AGAINST UNINSURED MOTORISTS

COVERAGE G—UNINSURED MOTORISTS

(DAMAGES for BODILY INJURY). To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership maintenance or use of such uninsured automobile;

\* \* \* \* \* \*

but the term "uninsured automboile" shall not include:

(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative.

The Insurance Company contends that the Chevrolet was neither an "owned" nor a "nonowned" automobile within the terms of the Dodge policy, and therefore not covered.[5] The appellants argue that the policy is ambiguous and, since ambiguities in insurance polices should be construed in favor of the insured, this Court should find coverage for the appellants.

■■ We fully agree with the authorities cited by appellants for the proposition that an insurance policy is to be construed liberally as against the insured and strictly as against the company which drafted it,[6] but we find no ambiguity in the instant policy which is capable of any construction but that which excludes coverage of Mr. Farber while he was driving the Chevrolet. From the language of the contract, it appears that the parties intended that no insurance coverage existed for accidents involving vehicles which were regularly used by the insured and his wife. The insurance company, in its brief, states the reasonable purpose for such intention:

"In effect, the terms of the policy prevent the insured from purchasing an insurance contract to cover the risk of operating one vehicle, and obtaining coverage on another vehicle that is regularly used in the household. This is a valid and understandable insurance provision. 13 Couch on Insurance 2d § 45: 1052, p. 68 (1965)."

The definitions contained in the "uninsured motorist" provision are intended to apply to vehicles other than those driven by the insured which may cause in-

---

5. There is no contention that the Chevrolet was a "temporary substitute automobile."

6. E. g., Norways Sanatorium v. Hartford Accident & Indemnity Co., 112 Ind.App. 241, 41 N.E.2d 823, 825, 44 N.E.2d 192 (1942); Koehn v. Central Nat. Life Ins. Co. of Omaha, 187 Kan. 192, 354 P. 2d 352, 357 (1960); State Security Life Ins. Co. v. Kintner, 243 Ind. 331, 185 N.E.2d 527, 531 (1962).

jury to the insured. We fail to see how the terms of this provision can modify or cause to be ambiguous the clear terms of the "liability" provision.

Perhaps the most appealing argument advanced by the appellants for finding coverage under the Dodge policy is contained in the following sentence from their brief: "It is incongruous to say that Henry Farber could drive almost any automobile in the world with the owner's permission and have insurance coverage, but could not drive his wife's car and be insured." Again, we must direct appellants' attention to the clear language of the contract which governs the disposition of this case. We cannot find ambiguity where none exists in order to reach a result which, albeit fair, is different from that prescribed by the contract. We therefore hold that the Dodge policy did not cover Mr. Farber while driving the Chevrolet automobile.

Appellants' last contention involves a theory of waiver or estoppel which is based on the allegation that the insurance company's agent, Harry Cohen, excluded coverage against the intention of the Farbers. Appellants argue that Cohen's knowledge of the fact that by writing separate policies for Mr. and Mrs. Farber the Chevrolet remained uncovered under Mr. Farber's Dodge policy, and Cohen's failure to inform Farber that after the Chevrolet policy had been cancelled Farber was not covered while driving that car, operated as a waiver of the defense. At least, the argument continues, there is a question of fact as to whether, as Farber deposed but as Cohen denied, Cohen specifically assured Farber that the latter was covered.

Appellants' contention is met at the outset by the insurance company's claim that the "waiver" issue was not raised below and cannot be raised for the first time on appeal. Potomac Ins. Co. v. Stanley, 281 F.2d 775, 781 (7th Cir. 1960); Atlas Assurance Co. Ltd. v. Standard Brick & Tile Corp., 264 F.2d 440, 443–444 (7th Cir. 1959). We believe, however, that since there was some

mention in oral argument before the District Court of a possible waiver, that justice would be better served by discussing this issue on its merits.

It seems apparent that appellants are actually seeking, not to restrict a defense, but to extend the coverage of the insurance policy by use of an estoppel or waiver theory. This approach has been held improper by the Appellate Court of Indiana in Travelers Insurance Co. v. Eviston, 110 Ind.App. 143, 37 N.E. 2d 310, 316 (1941) and Kentucky Central Life & Accident Insurance Company v. White, 106 Ind.App. 530, 19 N.E.2d 872, 875 (1939). Thus, appellants' attempt to bring the Chevrolet automobile within the coverage of the Dodge policy is an attempt to bring in a new risk not bargained for.

" * * * [T]he doctrine of implied waiver or of estoppel is not available to bring within the coverage of an insurance policy, risks that are not covered by its terms, or that are expressly excluded therefrom." Travelers Ins. Co. v. Eviston, 110 Ind.App. 143, 159, 37 N.E.2d 310, 316 (1941).

Moreover, the case of General Accident Fire & Life Assurance Corp. v. Maryland Casualty Company, 387 F.2d 789 (7th Cir. 1967), cited by appellants, is distinguishable in that there the insurance agent made express representations at the time the parties entered into the insurance contract. In the instant case, however, there was no evidence of Cohen making any representations before the accident took place, but only afterwards.

Furthermore, we have found no authority for the proposition advanced by appellants that an insurance agent must affirmatively warn his customers of the provisions contained in the insurance policies. We therefore hold that appellants cannot prevail by means of an estoppel or waiver theory.

For the foregoing reasons, the judgment below is affirmed.

Affirmed.